1  David M. Goodrich, State Bar No. 208675
   dgoodrich@wgllp.com
2  **WEILAND GOLDEN GOODRICH LLP**
   650 Town Center Drive, Suite 600
3  Costa Mesa, California 92626
   Telephone   714-966-1000
4  Facsimile   714-966-1002

5  Counsel for
   Richard A. Marshack, Chapter 7 Trustee
6

7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10  In re                              Case No. 8:20-bk-10268-TA

11  FARIBORZ ZANJANEE BABAEE           Chapter 7
    AND MALIHE P. BABAEE,
12                                     **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:**
                          Debtors.     **(1)  AUTHORIZING SALE OF REAL PROPERTY**
13                                          **FREE AND CLEAR OF LIENS, CLAIMS, AND**
                                            **INTERESTS PURSUANT TO 11 U.S.C.**
14                                          **§§ 363(b) AND (f);**
                                       **(2)  APPROVING OVERBID PROCEDURES;**
15                                     **(3)  APPROVING BUYER, SUCCESSFUL BIDDER,**
                                            **AND BACK-UP BIDDER AS GOOD-FAITH**
16                                          **PURCHASER PURSUANT TO 11 U.S.C.**
                                            **§ 363(m);**
17                                     **(4)  AUTHORIZING PAYMENT OF UNDISPUTED**
                                            **LIENS, REAL ESTATE BROKER'S**
18                                          **COMMISSIONS, AGENT'S ADMINISTRATIVE**
                                            **CLAIM, AND OTHER ORDINARY COSTS OF**
19                                          **SALE; AND**
                                       **(5)  DIRECTING ALL OCCUPANTS OF THE**
20                                          **PROPERTY TO VACATE THE PROPERTY**
                                            **AND REMOVE ALL PERSONAL PROPERTY;**
21                                     **MEMORANDUM OF POINTS AND AUTHORITIES;**
                                       **DECLARATIONS OF RICHARD A. MARSHACK,**
22                                     **CLARENCE YOSHIKANE, ANDREW TAN AND**
                                       **JENNY HUANG IN SUPPORT**
23
                                       **[508 Westminster Avenue, Newport Beach,**
24                                     **California 92663; APN:  425-092-24]**

25                                     <u>Remote Hearing:</u>
                                       **DATE:**      **October 12, 2021**
26                                     **TIME:**      **11:00 a.m.**
                                       **PLACE:**     **Courtroom 5B**
27                                                    **411 West Fourth Street**
                                                      **Santa Ana, California 92701**
28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 2

II.   FACTUAL BACKGROUND ................................................................ 3

    A.   Debtor's Bankruptcy Filing and Trustee's Appointment ............... 3

    B.   Property ....................................................................................... 3

    C.   Employment of Broker .................................................................. 4

    D.   Value and Marketing of the Property ........................................... 4

    E.   Liens, Claims and Interests on the Property ................................ 5

    F.   Property Taxes ............................................................................. 8

III.  TERMS OF THE PROPOSED SALE ................................................ 8

IV.   PROPOSED OVERBID PROCEDURES ........................................... 9

    A.   Overbid Procedures ..................................................................... 9

V.    ARGUMENT ..................................................................................... 11

    A.   Legal Standard for Approving Sales Under §363(b) .................. 11

    B.   The Sale Should Be Approved Because It Is Supported By A Good ......................................................................................... 12

    C.   The Price is Reasonable Based Upon the Trustee's Marketing Efforts ........................................................................................ 13

    D.   The Sale is Made in Good Faith ................................................. 13

    E.   The Trustee May Sell the Property Free and Clear of Liens, Claims, and Interests ................................................................. 14

        1.   The Sale Should Be Free and Clear Under § 363(f)(1) .... 14

        2.   The Sale Should Be Free and Clear Under § 363(f)(2) .... 15

        3.   The Sale Should Be Free and Clear Under § 363(f)(5) .... 16

        4.   The Sale Should Be Free and Clear of the Debtors' Claimed Homestead Exemption ....................................... 17

    F.   Tax Consequences ..................................................................... 18

    G.   Adequate Notice of the Sale is Proper ....................................... 18

i

1

## TABLE OF CONTENTS (cont.)

2                                                                                    **Page**

3    H.    Waiver of the Fourteen-Day Period for Effectiveness of the
           Sale Order ................................................................................18

4

5    I.    The Buyer Should Be Deemed a "Good Faith Purchaser"
           Pursuant to 11 U.S.C. § 363(m) ................................................19

6    J.    The Bankruptcy Court Has the Authority to Implement the
           Proposed Overbid Procedures ..................................................20
7

8    K.    The Broker Commission Should Be Approved ...........................20

9    L.    The Agent's Administrative Claim Should Be Approved............21

     M.    Estimated Benefit to the Estate ................................................21
10

11   VI.  THE DEBTORS AND ALL OTHER OCCUPANTS OF THE
          PROPERTY SHOULD BE REQUIRED TO VACATE............................22

12   VII.  CONCLUSION .................................................................................23

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*995 Fifth Ave., Assocs.,*
    96 B.R. 24 (Bankr. S.D.N.Y. 1989)..................................................................... 12

*Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*
    99 B.R. 124 (Bankr. N.D. Ga. 1988)................................................................... 12

*Community Thrift & Loan v. Suchy (In re Suchy),*
    786 F.2d 900, 902 (9th Cir. 1985) ..................................................................... 19

*EEOC v. Knox-Schillinger (In re Trans World Airlines, Inc.)*, 322 F.3d 283,
    290-91 (3d Cir. 2003) ........................................................................................ 16

*Ewell v. Diebert (In re Ewell),*
    958 F.2d 276, 281 (9th Cir. 1992) ..................................................................... 19

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*,
    331 B.R. 251 (N.D. Tex. 2005)........................................................................... 12

*Id.*, 2019 WL 408628 (9th Cir. BAP 2019)............................................................. 18

*In re 240 North Brand Partners, Ltd.*,
    200 B.R. 653 (9th Cir. B.A.P. 1996) ............................................................ 11, 12

*In re Abbotts Dairies of Pennsylvania, Inc.,*
    788 F.2d 143, 147 (3d Cir. 1986) ...................................................................... 19

*In re American West Airlines*,
    166 B.R. 908 (Bankr. D. Ariz. 1994)................................................................... 11

*In re Crown Corporation*,
    679 F.2d 774 (9th Cir. 1982) ............................................................................. 20

*In re Cummins,*
    15 B.R. 893, 895 (B.A.P. 9th Cir. 1981) ............................................................ 21

*In re Ernst Home Center, Inc.*,
    209 B.R. 974 (Bankr. W.D. Wash. 1997) ........................................................... 11

*In re Food Barn Stores, Inc.*,
    107 F.3d 558 (8th Cir. 2010) ............................................................................. 12

*In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R.
    15, 17 (Bankr. E.D. Pa. 1987) ........................................................................... 13

*In re Integrated Resources, Inc.*,
    147 B.R. 650 (Bankr. S.D.N.Y. 1992)................................................................. 12

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3    *In re Jolan*, 403 B.R. 866 (Bankr. W.D. WA 2009)............................................. 16

4    *In re Lajijani,*

5        325 B.R. 282 (B.A.P. 9th Cir. 2005) ........................................................ 12

6    *In re Lebbos*, 2012 WL 6737841 (9th Cir. 2012), citing *In re Haberman*, 516
        F.3d 1207, (10th Cir. 2008) ..................................................................... 16

7    *In re Lionel Corp.,*

8        722 F.2d 1063 (2d Cir. 1983) ................................................................... 11

9    *In re Onouli_Kona Land Co.,*
        846 F.2d 1170 (9th Cir. 1988) ................................................................ 18

10   *In re Roach*, 2019 WL 408628 (9th Cir. BAP 2019) ........................................ 18

11   *In re Shary, 152 B.R. 724 (Bankr. N.D. Ohio 1993)* ..................................... 15

12   *In re Tabore, Inc., 175 B.R. 855 (Bankr. D. N.J. 1994)* ................................. 15

13   *In re Walter*,

14       83 B.R. 14 (9th Cir. B.A.P. 1988) ............................................................ 12

15   *In re Wilde Horse Enterprises, Inc.,*
        136 B.R. 830 (Bankr. C.D. Cal. 1991)............................................... 11, 12

16   *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal.
17       1991)................................................................................................. 13

18   *In re WPRV-TV, Inc.*,
        143 B.R. 315 (D.P.R. 1991) ................................................................... 12

19   Section 363(f) .................................................................................................. 7

20   *See Veltman v. Whetzal, 93 F.3d 517 (8th Cir. 1996)* ................................... 15

21   *Sumitomo Bank v. Davis*, 4 Cal.App.4th 1306, 1314, 6 Cal.Rptr.2d 381
22       (1992)............................................................................................... 17

**Statutes**

23

FRBP 6004(h).......................................................................................... 19, 27

24   FRBP 6006(d)................................................................................................ 27

25   FRCP 62(a)................................................................................................... 27

26   11 U.S.C. § 363(b) ....................................................................................... 14

27   11 U.S.C. § 510(a) ................................................................................. 15, 25
28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

11 U.S.C. §  510(c)(2)..................................................................................... 7, 15, 24

11 U.S.C. § § 363(b) and (f).................................................................................... 23

11 U.S.C. § 101(54)(a)............................................................................................ 17

11 U.S.C. § 327 ....................................................................................................... 21

11 U.S.C. § 363(f) ................................................................................................... 14

11 U.S.C. § 510(a).................................................................................................... 7

11 U.S.C. § 510(c)(1).................................................................................... 7, 15, 24

11 U.S.C. § 522(g).................................................................................................. 17

11 U.S.C. §§ 363(b)............................................................................................. 2, 9

*11 U.S.C. §§ 363(f)* ............................................................................................ 2, 9

11 U.S.C. §328 ...................................................................................................... 21

11 U.S.C. §363(f)(1) .............................................................................................. 14

11 U.S.C. §363(f)(2) .............................................................................................. 16

11 U.S.C. §363(f)(2) .............................................................................................. 15

11 U.S.C. §363(f)(5) .............................................................................................. 16

11 U.S.C. 105(a) .................................................................................................... 20

11 U.S.C. 363(b)(1) ............................................................................................... 20

11 U.S.C. 363(m)............................................................................................ 19, 27

11 U.S.C.§ 363(f) .................................................................................................. 25

11 U.S.C. § 105(a) ................................................................................................. 20

11 U.S.C. § 363(b)(1) ............................................................................................ 20

11 U.S.C. §§ 363(b) and (f)............................................................................. 29, 31

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTORS AND DEBTORS' COUNSEL; AND PARTIES IN INTEREST:**

Richard A. Marshack, the duly appointed, qualified and acting Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Fariborz Zanjanee Babaee and Malihe P. Babaee ("Debtors"), files this *Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant 11 U.S.C. §§ 363(b) and  (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, Agent's Administrative Claim, and Other Ordinary Costs of Sale; and (5) Directing all Occupants of the Property to Vacate the Property and Remove all Personal Property* ("Motion").  In support of the Motion, the Trustee submits the following memorandum of points and authorities and the Declarations of Richard A. Marshack ("Marshack Decl."), Clarence Yoshikane ("Yoshikane Decl."), Andrew Tan ("Tan Decl.") and Jenny Huang ("Huang Decl."), and represents as follows:

## I.    <u>INTRODUCTION</u>

The Trustee requests authority to sell real property located at 508 Westminster Avenue, Newport Beach, California 92663 ("Property"), for a purchase price of $2,860,000.00, subject to overbids and free and clear of all liens, claims and interests.  As discussed below, the Trustee believes the purchase price represents the fair market value of the Property.  Further, the proposed sale is reasonable and in the best interest of the Estate because the sale will generate enough unencumbered funds to pay administrative and unsecured claims of the Estate.  The Trustee also requests (i) approval of the buyer, successful bidder and back-up bidder as good-faith purchasers, (ii) approval of proposed overbid procedures, (iii) approval to pay any liens, real estate taxes owed, the broker's commission, the agent's administrative claim, and other costs of sale, (iv) an order directing all occupants of the property to vacate the property and remove all personal

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  property, and (v) waivers of the lodging period and any stay of the order granting this

2  Motion.

3  **II.    FACTUAL BACKGROUND**

4      **A.    Debtor's Bankruptcy Filing and Trustee's Appointment**

5      On January 27, 2020 ("Petition Date"), the Debtors filed a voluntary petition for

6  relief under Chapter 7 of the Bankruptcy Code commencing the above-captioned

7  bankruptcy case no. 8:20-bk-10268-TA ("Case").  On the same day, Richard A. Marshack

8  was appointed Chapter 7 trustee and continues to serve in that capacity.

9      **B.    Property**

10     In their Schedule A/B, the Debtors list an ownership interest in the Property.  The

11 Trustee has received an offer to purchase the Property for $2,860,000.00.  As more fully

12 described below, Schedule D and the Trustee's books and records reflect the Property is

13 encumbered by the following secured claims:

14     - a lien held by Shellpoint Mortgage Servicing/Wilmington Savings Fund

15         Society ("Shellpoint") to secure a claim of approximately $1,650,243.80;

16     - a lien held by First Choice Bank ("First Choice") to secure a claim of

17         approximately $150,000.00;

18     - a lien held by Comerica Bank ("Comerica") to secure a claim of

19         approximately $449,325.00;

20     - a lien held by Valley Economic Development Center ("VEDC") to secure a

21         claim of approximately $425,000.00;

22     - a lien held by the Internal Revenue Service ("IRS") to secure a claim of

23         approximately $104,035.00;

24     - a lien held by the Orange County Treasurer to secure a claim of $29,914.00;

25         and

26     - a judgment lien in favor of Branch Bank & Trust Company ("BBTC") in the

27         approximate amount of $173,808.00.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

The Debtors' Schedule C asserts that the Debtors have claimed an exemption of $175,000.00 against the Property ("Claimed Exemption").  The relevant portions of Schedules A/B, C and D are attached hereto collectively as **Exhibit 1**.  *See* Marshack Decl.

### C.    Employment of Broker

On May 22, 2020, the Trustee filed an application ("Application") to employ Clarence Yoshikane ("Agent"), formerly an agent of Coldwell Banker Residential Brokerage and now with Berkshire Hathaway HomeServices California Properties ("Broker").  The employment terms provide for a total broker's commission aggregating five and one-half percent (5 1/2%) of the sales price of the Property, upon close of escrow.  On June 11, 2020, the Court entered an order approving the Application ("Agent's Order").  A copy of the Agent's Order is attached as **Exhibit 2**.  *See* Marshack Decl.  The Agent's Order provides, among other things, for the payment of a commission to the Agent and reimbursement of out-of-pocket costs up to $5,000.00 as an administrative claim, should any out-of-pocket costs be allowed.  *See* Exhibit 2.  In connection with marketing the Property, the Agent advanced $135.00 for landscaping services ("Administrative Claim").  A copy of the Agent's expense statement, invoices and checks is attached as **Exhibit 3**.  *See* Yoshikane Decl.  The total broker's commission is 5.5% if this Motion is granted and the sale closes, but subject to Court approval.  *Id.*

### D.    Value and Marketing of the Property

The Agent has extensive experience in marketing and selling real property and, based on an investigation of surrounding property values and the interest generated by the listing, the Agent believes the proposed purchase price for the Property represents current fair market value for the Property and the highest and best offer.  *See* attached Yoshikane Decl.  The Agent has listed the Property for sale in the Orange County Multiple Listing Service.  The listing is also available on various real estate websites.  The Agent has received and responded to numerous inquiries regarding the Property, has received a total of 11 offers for the Property, and is continuing to market the Property for overbids.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 Prior to the sale hearing, the Agent will publish the details of the hearing and the overbid

2 procedures in the Orange County MLS.  *See* Yoshikane Decl.

3 **E.** **Liens, Claims and Interests on the Property**

4 According to the Amended Preliminary Report prepared by Fidelity National Title

5 Company with an effective date of August 6, 2021 ("Title Report"), a copy of which is

6 attached as **Exhibit 4**, the following items have been recorded against the Property:

| Recording Date | Lien Holder | Type of Encumbrance | Document Number | Original Lien Amount |
|---|---|---|---|---|
| 9/29/2014 (item 5) | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for New Penn Financial, LLC, a Limited Liability Corporation | Deed of Trust | 2014-395001 | $1,500,000.00 |
| 12/6/2018 | Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not in its Individual Capacity but Solely as Trustee on behalf of CSMC Trust 2015-WIN1, its successors and assigns | Assignment | 2018-456428 | |
| 06/04/2015 (item 6) | First Choice Bank | Assignment | 2015-290301 | |
| 06/04/2015 (item 7) | First Choice Bank | Deed of Trust | 2015-290300 | $150,000.00 |
| 08/11/2015 (item 8) | Comerica Bank, a Texas banking association | Deed of Trust | 2015-413959 | $408,000.00 |
| 01/20/2016 (item 9) | Valley Economic Development Center, Inc. | Deed of Trust | 2016-25054 | $380,000.00 |
| 01/20/2016 (item 10) | Valley Economic Development Center, Inc. | Deed of Trust | 2016-25055 | $120,000.00 |
| 09/25/2019 (item 11) | Branch Banking and Trust Company | Abstract of Judgment | 2019-369359 | $170,457.57 |

21 The liens of Shellpoint, First Choice, Comerica and VEDC are undisputed.

22 Comerica holds a third position deed of trust asserted against the Property ("Third

23 DoT").  VEDC held a fourth position deed of trust asserted against the Property ("Fourth

24 DoT") securing, among other things, a loan made by VEDC to World Class Exotics, which

25 was guaranteed by Fariborz Zanjanee Babaee and Malihe P. Babaee ("WCE Guarantee"),

26 and the WCE Guarantee. City National Bank ("CNB") held a lien against certain assets of

27 VEDC, including a promissory note/promissory notes and a guarantee secured by the

28 Fourth DoT asserted against the Property. The VEDC Plan, which was confirmed by the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   bankruptcy court in VEDC's bankruptcy case by order entered on April 16, 2020, took

2   effect on May 1, 2020.  Pursuant to the Plan, a Liquidating Trust was created and VEDC

3   transferred all right, title and interest of VEDC and VEDC's bankruptcy estate in property

4   and assets of VEDC, including the Fourth DoT, to the Liquidating Trust.

5        The Trustee has entered into separate carve-out agreements ("Settlement

6   Agreements") with (1) Comerica, and (2) CNB and the Liquidating Trust regarding a

7   conditional sale of the Property, subject to Court approval of the Settlement Agreements

8   and the underlying sale.  Among other things, the Settlement Agreements provide for the

9   subordination and transfer of the VEDC and Comerica liens to the Trustee.  On August

10  17, 2021, the Trustee filed his *Motion for Order Approving Compromise of Controversy*

11  *Pursuant to Federal Rule of Bankruptcy Procedure 9019* ("9019 Motion") and related

12  notice.  The Debtors subsequently filed their objection and request for hearing on the

13  9019 Motion.  On September 14, 2021, the Trustee filed a notice of the hearing on the

14  9019 Motion which will be held concurrently with the hearing on this Motion.  Dkts.  71, 72,

15  75 and 76.  *See* Marshack Decl.

16       The Trustee intends to pay the following undisputed liens or claims at closing of the

17  sale:

18       (i)  the Shellpoint lien recorded on September 29, 2014 as instrument no.

19  2014-395001 in Orange County, California, shall be paid in full as of the date of the

20  closing of the sale;

21       (ii) the First Choice lien recorded on June 4, 2015 as instrument no. 2015-

22  290300 in Orange County, California, shall be paid in full as of the date of the

23  closing of the sale;

24       (iii) the lien of Comerica[1] recorded on August 11, 2015 as instrument no.

25  2015-413959 in Orange County, California, shall be paid as follows:

26  _____

27       [1] The 9019 Motion seeks an order providing that all but $410,000.00 of the Comerica Lien
    shall be subordinated to the claims of the Trustee, his professionals, and general unsecured

28                                                                                    (Continued...)

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

(a)    $410,000.00 to Comerica;

(b)    the remainder of the Comerica lien (approximately $39,325.00) to the Estate;

(iv) the liens of VEDC recorded on January 14, 2016, as instrument nos. 2016-25054 and 2016-25055 in Orange County, California,[2] shall be paid as follows:

(a)    $191,000.00 to CNB, assignee of the Liquidating Trust; and

(b)    the remainder of the VEDC lien (approximately $234,000) to the Estate;

According to the Court's register of claims ("Claims Register"), a copy of which is attached as **Exhibit 5**, the following relevant claims have been filed:

| Claim Number | Claimant | Date Filed | Claim Amount/Basis | Classification |
|---|---|---|---|---|
| 4-1 | Department of the Treasury – Internal Revenue Service | 4/16/2020 | $94,468.44 – 2014-2015 income tax (including $19,819.42 in penalties and $18,670.88 in interest)<br>$850.00<br>$95,318.44 | Secured<br><br>Uns. Priority<br>Total |
| 26-1 | Branch Banking & Trust Company (now Truist) | 7/13/2020 | $285,489.97 – Judgment | Secured |

Pursuant to Section 363(f) (1),(4) and/or (f)(5) of the Bankruptcy Code, effective upon closing, the sale of the Property will vest in Buyer all right, title and interest of the

---

(...Continued)

creditors of the Debtors' estate, with the remainder retaining the same validity, priority, and extent that would otherwise exist under California law, pursuant to 11 U.S.C. § 510(c)(1).  Further, pursuant to 11 U.S.C. §  510(c)(2), the lien securing the subordinated portion of the Comerica Lien shall be transferred to the Estate with the Estate receiving all associated rights held by Comerica as to the subordinated portion of the Comerica Lien.

[2] The 9019 Motion seeks an order providing that the remaining $234,000.00 of CNB's interest in the CNB/VEDC Lien ("Subordinated Portion") is subordinated to the claims of the Trustee, his professionals, and general unsecured creditors of the Debtors' Estate, pursuant to 11 U.S.C. § 510(a).  Further, the lien securing the Subordinated Portion shall be transferred to the Estate with the Estate receiving all associated rights held by CNB as to the subordinated portion of the CNB/VEDC Lien.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

1  Debtor and the bankruptcy estate in the Property, free and clear of the liens, claims or

2  interests listed below (collectively, "Affected Interests"):

3         -      Department of the Treasury – IRS – lien recorded on August 17, 2016

4  as instrument no. 2016-000388256 in Orange County, California, in the amount of

5  $104,035.80; and

6         -      the judgment lien of BB&TC (now Truist) recorded on February 4,

7  2019 as instrument no. 2019-369359 in Orange County, California, in the amount

8  of $170,457.57.

9         In addition, the sale of the Property will be free and clear of the Claimed

10  Exemption.

11         **F.    <u>Property Taxes</u>**

12         Pursuant to the Purchase Agreement, real property taxes and assessments are to

13  be prorated between the Trustee and the Buyer through escrow as of the closing.

14  According to the Title Report:  (i) property taxes, which are a lien not yet due and payable,

15  including any assessments collected with taxes to be levied for the fiscal year 2021-2022;

16  and (2) the lien of supplemental or escaped assessments of property taxes, if any, made

17  pursuant to Chapter 3.5 commencing with Section 75) or Part 2, Chapter 3, Articles 3 and

18  4, respectively, of the California Revenue and Taxation Code.  All real property taxes

19  owed will be paid in full through escrow.  *See* Marshack Decl.

20  **III.   <u>TERMS OF THE PROPOSED SALE</u>**

21         Andrew Tan and Jenny Huang ("Buyer"), have offered to purchase the Property,

22  and the Trustee has accepted that offer.  The salient terms of the sale are as follows:

23         1.     The purchase price ("Purchase Price") is $2,860,000.00;

24         2.     The Buyer has made an initial deposit of $100,000.00 ("Deposit")

25  payable to Richard A. Marshack, Bankruptcy Trustee for Case No. 8:20-bk-10268-

26  TA.  The Deposit is currently held by the Trustee.  The Deposit is refundable to the

27  Buyer only in the event the Bankruptcy Court accepts a third party overbid, or does

28  not approve the Purchase Agreement for reasons not attributable to the Buyer.

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

The Trustee shall retain the Deposit as liquidated damages if the Bankruptcy Court approves the sale and the Buyer defaults under the Purchase Agreement;

3.    The balance of the Purchase Price shall be tendered upon Close of Escrow (as defined in the Purchase Agreement);

4.    The sale is as is, where is, with all faults, without warranty or recourse, but free and clear of any and all liens, claims, and interests, together with all improvements, as well as all easements and appurtenances pursuant to 11 U.S.C. §§ 363(b) and  (f);

5.    The sale is subject to approval of the Bankruptcy Court; and

6.    The sale is subject to overbids.

The complete terms of the proposed sale are set out in the *Residential Purchase Agreement and Joint Escrow Instructions, Addendum to Purchase Agreement, and Addendum No. One* (together, "Purchase Agreement") attached as **Exhibit 6**.  *See* Marshack Decl.

**IV.    PROPOSED OVERBID PROCEDURES**

**A.    Overbid Procedures**

The Trustee proposes the following procedure to allow for overbids prior to the Court's approval of the sale of the Property to ensure that the Property is sold for the best possible price:

1.    Qualifying bidders ("Qualifying Bidder") shall:

a.    Bid at least $2,870,000.00 in cash for the Property;

b.    Set forth in writing the terms and conditions of the offer that are at least as favorable to the Trustee as those set forth in the Purchase Agreement attached as **Exhibit 6**;

c.    Be financially qualified, in the Trustee's exercise of his sound business judgment, to close the sale as set forth in the Purchase Agreement;

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

d.    Submit an offer that does not contain any contingencies to closing the sale, including, but not limited to, financing, inspection, or repair contingencies;

e.    Submit a cash deposit in the amount of $110,000.00 ("Overbid Deposit") payable to Richard A. Marshack, Chapter 7 Trustee for the Bankruptcy Estate of Fariborz Zanjanee Babaee and Malihe P. Babaee, in the form of a cashier's check, which Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid, as defined in paragraph 4 below.  The Overbid Deposit, written offer, and evidence of financial qualification must be delivered to the Trustee's counsel (at the address shown in the upper left hand corner of the first page of this Motion) by no later than **4:00 p.m**., Pacific Standard Time, two days before the hearing on this Motion ("Overbid Deadline").  In his absolute and sole discretion, the Trustee shall have the right to accept additional overbids submitted prior to the hearing but after the Overbid Deadline.

2.    At the hearing on the Motion, only the Buyer and any party who is deemed a Qualifying Bidder shall be entitled to bid.

3.    Any incremental bid in the bidding process shall be at least $10,000.00 higher than the prior bid.

4.    At the hearing on the Motion and upon conclusion of the bidding process, the Trustee shall decide, subject to Court approval, which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid."  The bidder who is accepted by the Trustee as the successful bidder ("Successful Bidder") must pay all amounts reflected in the Successful Bid in cash at the closing of the sale. At the hearing on the Motion, and upon conclusion of the bidding process, the Trustee may also acknowledge a back-up bidder ("Back-Up Bidder") which shall be the bidder with the next best bid.  Should the Successful Bidder fail to close escrow

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

1341022.1

MOTION

1   on the sale of the Property, the Trustee may sell the Property to the Back-Up

2   Bidder without further Court order.

3       5.    Overbids shall be all cash and no credit shall be given to the

4   purchaser or overbidder(s).

5       6.    Upon the conclusion of the auction, any Overbid Deposits, other than

6   the deposits submitted by the Successful Bidder and the Back-Up Bidder, will be

7   promptly returned.  The deposit of the Back-Up Bidder will be returned promptly

8   following the close of escrow for the sale of the Property to the Successful Bidder.

9       7.    In the event the Buyer is not the Successful Bidder, then the

10  Successful Bidder shall reimburse the Buyer up to $2,000.00 in costs incurred.

11  Only a physical inspection, termite inspection and loan appraisal are reimbursable

12  expenses.  Monies are to be collected by A & A Escrow Services, Inc.  Proof of

13  monies spent shall be given to the Successful Bidder.

14  **V.    ARGUMENT**

15      **A.    Legal Standard for Approving Sales Under §363(b)**

16  Section 363(b) of the Bankruptcy Code empowers a trustee to "use, sell or

17  lease . . . other than in the ordinary course of business, property of the estate."    In

18  considering a proposed transaction to use, sell, or lease, courts look at whether the

19  transaction is in the best interests of the estate based on the facts and history of the case.

20  *In re American West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel*

21  *Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business

22  justification" for the proposed transaction.  *In re 240 North Brand Partners, Ltd.*, 200 B.R.

23  653 (9th Cir. B.A.P. 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D.

24  Cal. 1991); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (Bankr. W.D. Wash. 1997).

25              In approving any sale outside the ordinary course of business,
26          the court must not only articulate a sufficient business reason
            for the sale, it must further find it is in the best interest of the
27          estate, i.e., it is fair and reasonable, that it has been given
            adequate marketing, that it has been negotiated and proposed
28          in good faith, that the purchaser is proceeding in good faith
            and that it is an 'arms-length' transaction.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1341022.1                         11                              MOTION

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. B.A.P. 1996).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion.  *In re Walter*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988).

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 2010) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); *995 Fifth Ave., Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).  As long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.  *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property.  Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

**B.**    **The Sale Should Be Approved Because It Is Supported By A Good Business Justification and Is In the Best Interest of the Estate**

Here, the proposed transaction has a legitimate business justification and is in the best interest of the Estate because it will generate proceeds for the benefit of the creditors of the Estate.  The Purchase Price represents market value.  *See* Yoshikane Decl.  Notice of the sale is being provided to all creditors, and the Trustee has proposed an overbid

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1    procedure to ensure the Estate receives the highest and best price for the Property at the

2    hearing.  After payment of real estate taxes, liens, brokers' commissions, costs of sale,

3    and the Agent's Administrative Claim, the Trustee estimates that the sale will generate

4    approximately $228,000.00 for the benefit of the Estate, plus an additional amount to pay

5    costs of sale.  Accordingly, the Trustee believes that the proposed sale is fair and

6    reasonable and within the proper exercise of his business judgment.  *See* Marshack Decl.

7    **C.    The Price is Reasonable Based Upon the Trustee's Marketing Efforts**

8    The Trustee initially listed the Property for sale at $2,599,888.00 in May 2020.  To

9    date, approximately 46 potential buyers have toured the Property.  The Trustee's Agent

10    received and responded to approximately 86 inquiries from agents and approximately

11    41 inquiries from buyers.  The Trustee has received eleven offers to purchase the

12    Property.  Six offers were for a lower purchase price, two offers were withdrawn, and three

13    offers were at listing price.  *See* Yoshikane Decl.  Based upon the Trustee's marketing

14    efforts, the length of time on the market, and the variety of prices explored in the market,

15    the Buyer's offer is fair and reasonable given the condition of the Property, location and

16    listing price.  As such, the price is reasonable under the circumstances.

17    **D.    The Sale is Made in Good Faith**

18    "Good faith encompasses fair value, and further speaks to the integrity of the

19    transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal.

20    1991) (internal quotation marks omitted).  Bad faith includes collusion between buyer and

21    seller or otherwise taking unfair advantage of other potential purchasers, such as a

22    collusive insider transaction.; *id.*; see also *In re Indus. Valley Refrigeration & Air*

23    *Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

24    The sale of the Property was negotiated at arms' length.  There is no fraud,

25    collusion, or insider transactions present here, and the Buyer received no special

26    treatment or consideration.  There is no connection or relation between the Debtor and the

27    Buyer and the Trustee and the Buyer.  Moreover, the Property has been actively

28    marketed, the sale will be properly publicized on the Bankruptcy Court's website, and the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

Trustee intends to further market the property pending a hearing on this Motion.  In short, the Trustee has accepted the highest and best offer. As a result, the sale is made in good faith.

**E.    The Trustee May Sell the Property Free and Clear of Liens, Claims, and Interests**

The Trustee seeks this Court's authority to sell the Property free and clear of liens pursuant to 11 U.S.C. §§ 363(b) and (f) of the Bankruptcy Code.  Section  363(b) of the Bankruptcy Code provides that:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

In addition, 11 U.S.C. § 363(f) provides that:

> [t]he trustee may sell property. . . free and clear of any interest in such property of an entity other than the estate, only if _. . .
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;. . .
> (2)    such entity consents;. . .
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code  § 363(f)  are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if, with respect to each lien holder, any of the conditions are met.

**1.    The Sale Should Be Free and Clear Under § 363(f)(1)**

Under §363(f)(1), estate property may be sold free and clear of certain liens, claims and interest if applicable nonbankruptcy law permits a sale free and clear of such interest. §363(f)(1).

The liens of Shellpoint and First Choice (the first and second position liens) will be paid in full as of the date of the closing of the sale.  Because these liens will be satisfied in

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  full, the sale should be approved free and clear of the liens.  Section 363(f)(1) is satisfied

2  as to these liens.

3  ## 2.    The Sale Should Be Free and Clear Under § 363(f)(2)

4  Under §363(f)(2), estate property may be sold free and clear of certain liens, claims

5  and interest if an entity holding a secured claim consents. 11 U.S.C. §363(f)(2).

6  Subject to Court approval of the 9019 Motion, all but $410,000.00 of the Comerica

7  Lien shall be subordinated to the claims of the Trustee, his professionals, and general

8  unsecured creditors of the Estate, with the remainder retaining the same validity, priority,

9  and extent that would otherwise exist under California law, pursuant to 11 U.S.C.

10  § 510(c)(1).  Further, pursuant to 11 U.S.C. §  510(c)(2), the lien securing the

11  subordinated portion of the Comerica Lien shall be transferred to the Estate with the

12  Estate receiving all associated rights held by Comerica as to the subordinated portion of

13  the Comerica Lien.  The agreement also provides for Comerica's consent to the sale.

14  Also subject to Court approval of the 9019 Motion, the subordinated portion

15  ($234,000.00) of the CNB/VEDC lien is subordinated to the claims of the Trustee, his

16  professionals, and general unsecured creditors of the Estate, pursuant to 11 U.S.C. §

17  510(a).  Further, the lien securing the subordinated portion shall be transferred to the

18  Estate with the Estate receiving all associated rights held by CNB as to the subordinated

19  portion of the CNB/VEDC Lien.  The agreement also provides for consent to the sale.

20  Section 363(f)(2) is satisfied as to the liens of Comerica and CNB/VEDC.

21  Additionally, the Trustee intends to notify all interested parties through the notice of

22  the motion. Any party objecting to the sale may file their objection and be heard at the

23  hearing on the Motion. If there is no objection, the parties will be deemed to have

24  consented to the sale of the Property. *See Veltman v. Whetzal*, 93 F.3d 517 (8th Cir.

25  1996) (failure to object to proposed sale, coupled with agreement authorizing sale free of

26  interest, constituted consent); *In re Tabore, Inc.*, 175 B.R. 855 (Bankr. D. N.J. 1994)

27  (failure to object to notice of sale or attend hearing deemed consent to sale for purposes

28  of § 363); *In re Shary*, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  transfer of liquor license constituted consent to sale). Thus, pursuant to  §363(f)(2), the

2  Trustee may sell the Property free and clear of any lien, claim or interest of entities who

3  fail to object because the noticed parties will be deemed to have consented to the sale of

4  the Property if they make no objections to the sale.

5  **3.    The Sale Should Be Free and Clear Under § 363(f)(5)**

6  Under §363(f)(5), estate property may be sold free and clear of certain liens, claims

7  and interest if an entity holding a secured claim consents.  §363(f)(5).

8  A sale can be authorized if the lien holder could be compelled, in a legal or

9  equitable proceeding, to accept a money satisfaction of such interest. *See In re Jolan*, 403

10  B.R. 866 (Bankr. W.D. WA 2009). Courts have held that Section 363(f)(5) applies

11  whenever an interest in the property to be sold is of a nature that such interest could be

12  satisfied with money (as opposed to specific performance being the only remedy). *See,*

13  *e.g., EEOC v. Knox-Schillinger (In re Trans World Airlines, Inc.)*, 322 F.3d 283, 290-91 (3d

14  Cir. 2003) (because employees' claims were "subject to monetary valuation," debtor's

15  assets could be sold free and clear of successor liability for such claims under §

16  363(f)(5)).

17  Under the Comerica and CNB/VEDC agreements, a portion of the liens of

18  Comerica and CNB/VEDC will be transferred to the Trustee, including all rights and

19  powers associated with each lien.  Hence, the Trustee steps into the shoes of Comerica

20  and CNB/VEDC.  *In re Lebbos*, 2012 WL 6737841 (9th Cir. 2012), citing *In re Haberman*,

21  516 F.3d 1207, (10th Cir. 2008) ("upon avoidance of a lien, under § 551 the trustee "steps

22  into the shoes of the former lienholder, with the same rights in the collateralized property

23  that the original lienholder enjoyed.").

24  As the holder of a portion of the Comerica and CNB/VEDC liens and the rights

25  associated with each security agreement, the Trustee may conduct a foreclosure sale of

26  the Property because each security agreement authorizes foreclosure in the event of a

27

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1

16

MOTION

default by the Debtors.[3]  Upon completion of the foreclosure sale, all liens that are junior

to the Trustee's avoided liens are extinguished. *See Sumitomo Bank v. Davis*, 4

Cal.App.4th 1306, 1314, 6 Cal.Rptr.2d 381 (1992) ("The judicial sale removes liens from

the property junior to the one being foreclosed.").  Because the Trustee can conduct a

foreclosure sale, the junior lienholders can be forced to accept nothing; which is all they

will receive if the Trustee conducts a foreclosure sale.  Section 363(f)(5) and/or

alternatively, §363(f)(1) are satisfied and the sale may be authorized free and clear of all

liens that are junior to the Comerica and CNB/VEDC liens.

4.    **The Sale Should Be Free and Clear of the Debtors'**

**Claimed Homestead Exemption.**

Property interests recovered by a trustee are not subject to exemptions of a debtor

is the debtor voluntarily transferred property to a third party.  *See* 11 U.S.C. § 522(g). A

transfer includes a creation of a lien against the debtor's property.  *See* 11 U.S.C.

§ 101(54)(a).  As such, consensual liens recorded against a debtor's property are a

transfer of property of the debtor.

Here, the Debtor voluntarily entered into loan and security agreements with

Comerica and CNB.  In exchange for money, the Debtor granted security interests in the

Property.  The security interests were delivered to Comerica and CNB and subsequently

perfected by the recording of deeds of trust.

The Trustee has entered into agreements with Comerica and CNB to recover a

portion of each lien tendered by the Debtor to Comerica and CNB.  Upon approval of each

agreement, the Trustee will recover an interest in the Property that was voluntarily

transferred by the Debtor to Comerica and CNB.  Under  § 522(g), the Debtors' claim of

homestead exemption cannot attach or be asserted against the recovered liens of

Comerica and CNB.  Hence, the Debtors are not entitled to payment on their homestead

---

[3] The Debtors are in default under both promissory notes and security agreements.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  exemption unless additional proceeds beyond the consensual liens, including the

2  transferred liens, are paid in full.

3       In applying similar facts to this case, the 9th Circuit BAP confirmed the application

4  of § 522(g) to a lien transferred to a trustee. *In re Roach*, 2019 WL 408628 (9th Cir. BAP

5  2019). The BAP stated that: "because Omaha Bank assigned the money portion of its lien

6  to the bankruptcy estate, the bankruptcy court properly determined that under the terms of

7  the compromise, [debtor] was not entitled to claim a homestead exemption in the sale

8  proceeds attributed to the transferred lien." *Id.*, 2019 WL 408628 (9th Cir. BAP 2019).

9       The transfer of liens in this case to the Trustee are the same type of transfer that

10  occurred in the *Roach* case. As the Court found in Roach, the Debtors' homestead

11  exemption cannot attach to the recovered liens. As such, the Debtors are not entitled to

12  claim a homestead in the liens transferred by Comerica and CNB to the Trustee.

13       **F.    Tax Consequences**

14       The Trustee has been advised that no capital gains taxes will be recognized from a

15  sale of the Property. Should any tax liability result from the sale, it will be paid from the

16  net proceeds. *See* Marshack Decl.

17       **G.    Adequate Notice of the Sale is Proper**

18       The Trustee proposes to provide notice of the sale to be posted by the Clerk's

19  Office and to serve notice of the sale on the Office of the United States Trustee, all

20  creditors, all potential overbidders, and all other parties receiving ECF and special notice

21  in this case. The Agent will also post the overbid procedures on the MLS. Further, the

22  Property is subject to overbid, and the ability of other potentially interested parties to

23  provide competing offers for the Property ensures that the proposed sale will not result in

24  a lucrative "windfall" to the Buyer at the expense of creditors of the Estate. *See In re*

25  *Onouli Kona Land Co.*, 846 F.2d 1170 (9th Cir. 1988).

26       **H.    Waiver of the Fourteen-Day Period for Effectiveness of the Sale Order**

27       Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property

28  other than cash collateral is stayed until the expiration of 14 days after entry of the order,

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

unless the court orders otherwise." FRBP 6004(h).  The legislative history to Rule 6004

provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)]
> is not applicable so that the property may be used, sold, or leased
> immediately in accordance with the order entered by the court.
> Alternatively, the court may order that the stay under Rule 6004(g)
> [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in overbid

procedures presented by this Motion, the Trustee believes that, unless there are

objections to the Motion that are not consensually resolved, it is appropriate and good

cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property

may be sold immediately. Accordingly, the Trustee requests that the Court authorize the

sale to be effectuated immediately upon entry of the order approving this Motion.

### I.    The Buyer Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)

Section  363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property
> in good faith, whether or not such entity knew of the pendency of
> the appeal, unless such authorization and such sale or lease
> were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'"  *Ewell v. Diebert*

*(In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of*

*Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically]

shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an

attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift*

*& Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

Here, the Buyer is buying in good faith and has agreed to pay market value for the

Property.  The anticipated sale of the Property has been negotiated with the Buyer in

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1    "arms'-length" discussions.  *See* Marshack Decl.  Moreover, the Buyer has no connections

2    to the Trustee, the Court, the Debtor or any other party, except that the Buyer is

3    represented by the Agent who also represents the Trustee.  (As provided below, the agent

4    will credit the Estate the buyer's side commission to which the Agent would be entitled if

5    the Buyer is the Successful Bidder.)  Finally, the sale is subject to overbid and all parties-

6    in-interest are permitted, subject to certain conditions, to bid. Based on such facts and

7    circumstances, the Trustee believes that this Court should find the Buyer is a "good faith

8    purchaser" pursuant to 11 U.S.C. § 363(m).

9        **J.**    **The Bankruptcy Court Has the Authority to Implement the Proposed**

10    **Overbid Procedures**

11        Implementation of the bidding procedures is an action outside of the ordinary

12    course of business.  11 U.S.C. § 363(b)(1) provides that a trustee "after notice and

13    hearing, may use, sell or lease, other than in the ordinary course of business, property of

14    the estate."  Furthermore, under 11 U.S.C. § 105(a), "[t]he court may issue any order,

15    process, or judgment that is necessary or appropriate to carry out the provisions of this

16    title."  Thus, pursuant to §§ 363(b)(1) and  105(a),  this Court may authorize the

17    implementation of overbidding procedures. The bankruptcy court may issue orders

18    determining the terms and conditions for overbids with respect to a sale of estate assets,

19    including specifying the minimum consideration required for an overbid, the particular

20    contractual terms required to be offered by overbidders, and requiring and setting the

21    amount of potential overbidder's deposits.  *In re Crown Corporation*, 679 F.2d 774 (9th

22    Cir. 1982).

23        Here, the overbid procedures proposed by the Trustee are fair and reasonable

24    under the circumstances.  Additionally, the proposed overbid procedures will ensure the

25    sale of generates the greatest possible value to the Estate.  Accordingly, the proposed

26    overbidding procedures should be approved by the Court.

27        **K.**    **The Broker Commission Should Be Approved**

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1

20

MOTION

1    Real estate brokers are "professionals" for purposes of section § 327 of the

2  Bankruptcy Code and, as such, their employment must be approved by the court.  *In re*

3  *Cummins*, 15 B.R. 893, 895 (B.A.P. 9th Cir. 1981).

4    The Broker and the Agent's employment was approved by the Court under §328.  If

5  the sale is consummated, the Broker and Agent will have performed a valuable service for

6  the Estate.  Accordingly, the commission arrangement as outlined in this Motion is

7  reasonable, should be approved by the Court and payment should be authorized out of

8  escrow in lieu of the requirement of a fee application.

9    In addition to representing the Trustee, the Broker and the Agent also represent the

10  Buyer.  In the event the Buyer is the Successful Bidder at the hearing on this Motion, the

11  Agent will credit the Estate, through escrow, one-half of the commission (the buyer's side

12  commission) to which the Agent is entitled.

13    **L.    The Agent's Administrative Claim Should Be Approved**

14    Pursuant to the Agent's Order, the Agent may seek allowance and payment of an

15  administrative claim up to $5,000 for improvements to the Property.  *See* Exhibit 2.  The

16  Agent has performed a valuable service for the Estate by advancing the cost of

17  professional landscaping services.  A copy of the Agent's invoice and cancelled checks for

18  the Landscaping Charges in the amount of $135.00 is attached as Exhibit 3.  The Court

19  should approve the payment of the Agent's expenses through escrow, if the Motion is

20  granted.

21    **M.    Estimated Benefit to the Estate**

22    The Trustee estimates the Estate will receive net proceeds of $228,000.00 from the

23  sale of the Property, plus an additional amount to cover the Estate's closing costs.  Based

24  upon the funds on hand and the anticipated net sale proceeds, the Trustee estimates a

25  meaningful distribution will be made to creditors of the Estate if the Property is sold.

26    The estimated net proceeds from a sale of the Property are calculated as follows:

27

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| Sale Price | $2,860,000.00 |
|---|---|
| Orange County Treasurer | $29,914.00 |
| Payoff of Shellpoint Lien | $1,650,243.80 |
| Payoff of First Choice Lien | $150,000.00 |
| Payoff to Comerica | $410,000.00 |
| Payoff to CNB | $191,000.00 |
| 7% Costs of Sale | $200,200.00 |
| Agent's Administrative Claim | $135.00 |
| Estimated Net Proceeds | $228,507.20 |

## VI. THE DEBTORS AND ALL OTHER OCCUPANTS OF THE PROPERTY SHOULD BE REQUIRED TO VACATE

The Trustee has been marketing the Property for more than one year.  The Trustee has finally received a viable offer.  The Trustee requests that the order granting this Motion provide that the Debtors and any and all other occupants of the Property be required to vacate the Property and remove all of their personal possessions within two days of the entry of the order granting this Motion.  In the event the Debtors and occupants fail to comply with the Court's order, the Trustee should be authorized to enlist the assistance of the U.S. Marshal.  The Debtors and all occupants have plenty of notice of the sale of the Property and have been living in the Property post-petition without paying any rent to the Trustee or paying the monthly mortgage payments, homeowner's association assessments or real property taxes.  Cause exists to grant this relief.

It is imperative that the sale of the Property close in a timely manner.  As such, there can be no delay by the Debtors or any other occupants of the Property in the closing of escrow on the sale of the Property.  In connection with the entry of the above order, the Trustee requests that the Court issue a writ of execution that the Trustee is authorized to deliver to the United States Marshal Service thirty calendar days after entry of the above order if the Debtors and any occupants fail to voluntarily comply with the order. Specifically, the Trustee requests that the Court issue a Writ of Execution directed at the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1

22

MOTION

United States Marshal Service that directs and authorizes the United States Marshal

Service to enforce the order pursuant to the following terms and conditions:

a.    The Trustee, in his capacity as the Chapter 7 trustee of the Debtors' Estate,

will act as custodian of any and all items of personal property left on the Property when

possession is taken;

b.    The United States Marshal, or other law enforcement agency, in taking

possession of the Property, shall employ whatever reasonable force is necessary to enter

the Property, regardless of whether the Property is locked or unlocked, occupied or

unoccupied;

c.    Anyone interfering with the enforcement of the Order shall be subject to

arrest by the United States Marshal, or other law enforcement agency;

d.    The Trustee will be authorized to hire and pay all reasonable and necessary

fees and expenses to a locksmith to assist in taking possession of the Property and to pay

all reasonable and necessary fees and expenses associated with the United States

Marshal or other law enforcement agency; and

e.    The Trustee will be authorized to remove, store and/or dispose of any

personal property that is left on the Property without further notice or order of this Court,

free and clear of any claims or interests of any party and the Trustee will be authorized to

pay all reasonable and necessary fees and expenses associated with the removal,

storage and disposal.

**VII.    CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that this Court find that:

A.    Notice of the Motion was proper and adequate;

B.    The Trustee's marketing of the Property was adequate and proper;

C.    The standards set forth in 11 U.S.C. § § 363(b) and (f) (1), (4) or (5) for

selling the Property free and clear of all liens, claims and interests, including all leasehold

interests, have been satisfied;

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1                    23                    MOTION

1    D.    Andrew Tan and Jenny Huang ("Buyer") has acted in good faith and is

2  entitled to the protections of 11 U.S.C. § 363(m); and

3    E.    Cause exists to grant the Motion.

4  The Trustee respectfully requests that this Court enter an order as follows:

5    1.    The notice of the Motion and the hearing thereon is approved as proper and

6  adequate under the circumstances.

7    2.    The Motion is granted and the sale to Buyer is approved as the highest and

8  best offer.

9    3.    The Trustee is authorized to sell the Property to Buyer for the purchase price

10  of $2,860,000.00, and in accordance with the terms and conditions that are set forth in the

11  Purchase Agreement which is attached to the Motion.

12    4.    The Trustee is authorized to pay the following undisputed liens or claims at

13  closing of the sale:

14    i.    the lien of Shellpoint recorded on September 29, 2014 as instrument

15  no. 2014-395001 in Orange County, California, shall be paid in full as of the date of

16  the closing of the sale;

17    (ii)    the lien of First Choice recorded on June 4, 2015 as instrument no.

18  2015-290300 in Orange County, California, shall be paid in full as of the date of

19  the closing of the sale;

20    (iii)    the lien of Comerica[4] recorded on August 11, 2015 as instrument no.

21  2015-413959 in Orange County, California, shall be paid as follows:

22    (a)    $410,000.00 to Comerica;

23

24  _____

25  [4] Subject to Court approval, all but $410,000.00 of the Comerica Lien shall be subordinated
to the claims of the Trustee, his professionals, and general unsecured creditors of the Debtors'
estate, with the remainder retaining the same validity, priority, and extent that would otherwise

26  exist under California law, pursuant to 11 U.S.C. § 510(c)(1).  Further, pursuant to 11 U.S.C. §
510(c)(2), the lien securing the subordinated portion of the Comerica Lien shall be transferred to

27  the Estate with the Estate receiving all associated rights held by Comerica as to the subordinated
portion of the Comerica Lien.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1                    24                    MOTION

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1           (b)     the remainder of the Comerica lien (approximately $39,325.00)

2   to the Estate;

3           (iv)    the liens of VEDC recorded on January 14, 2016, as instrument nos.

4   2016-25054 and 2016-25055 in Orange County, California,[5] shall be paid as

5   follows:

6           (a)     $191,000.00 to CNB, assignee of the Liquidating Trust, and

7           (b)     the remainder of the VEDC lien (approximately $234,000) to

8   the Estate;

9       5.    Pursuant to Section   363(f) (1) and/or (f) (5) of the Bankruptcy Code,

10  effective upon closing, the sale of the Property will vest in Buyer all right, title and interest

11  of the Debtor and the bankruptcy estate in the Property, free and clear of the following

12  Affected Interests:

13      -    IRS lien recorded on August 17, 2016 as instrument no. 2016-

14  000388256 in Orange County, California, in the amount of $104,035.80; and

15      -    BB&TC (now Truist) judgment lien recorded on February 4, 2019 as

16  instrument no. 2019-369359 in Orange County, California, in the amount of

17  $170,457.57.

18      6.    Unless the holders of the liens, claims or interests identified in paragraph 5

19  above have agreed to other treatment, their liens, claims or interests, to the extent such

20  liens, claims or interests have not been extinguished by this Order, shall attach to the

21  proceeds of the sale with the same force, effect, validity and priority that previously

22  existed against the Property.

23

24  _____

25  [5] Subject to Court approval, the remaining $234,000.00 of CNB's interest in the CNB/VEDC

26  Lien ("Subordinated Portion") is subordinated to the claims of the Trustee, his professionals, and
general unsecured creditors of the Debtors' Estate, pursuant to 11 U.S.C. § 510(a). Further, the

27  lien securing the Subordinated Portion shall be transferred to the Estate with the Estate receiving
all associated rights held by CNB as to the subordinated portion of the CNB/VEDC Lien.

28

7.  The Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, all Affected Interests have been and hereby are adjudged and declared to be unconditionally released as to the Property and the Department of Treasury and Branch Banking & Trust Company, or their beneficiaries, shall execute and deliver deeds of reconveyance to the Trustee and any other documents necessary to demonstrate their liens have been unconditionally released and extinguished.

8.  The Buyer has not assumed any liabilities of the Debtor.

9.  The Trustee is authorized to execute any such releases, termination statements, consents or instruments on behalf of any third party, including the holders of any liens, claims or interests identified in paragraph 4 of this Order, that are necessary or appropriate to effectuate or consummate the sale.

10.  The Trustee, and any escrow agent upon the Trustee's written instruction, shall be authorized to make such disbursements on or after the closing of the sale as are required by the Purchase Agreement or order of this Court, including, but not limited to, (a) all delinquent real property taxes and outstanding postpetition real property taxes and assessments pro rated as of the closing with respect to the Property; (b) the broker's commission; and (c) any escrow fees, title insurance premiums and other ordinary and typical closing costs and expenses payable by the Trustee pursuant to the Purchase Agreement or in accordance with local custom.

11.  The Trustee is authorized to execute the Purchase Agreement, or other related documents that are reasonably necessary or appropriate to complete the sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the sale.

12.  Except as otherwise provided in the Motion, the Property shall be sold, transferred, and delivered to the Buyer on an "as is, where is" or "with all faults" basis.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1

26

MOTION

13.    The Buyer is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and the Buyer shall be entitled to all protections to Section 363(m) of the Bankruptcy Code.

14.    This Order shall be effective immediately upon entry.  No automatic stay of execution, pursuant to Rule  62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

15.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Property to Buyer, (b) resolve any disputes arising under or related to the Purchase Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Property.

16.    The Purchase Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

17.    The Trustee may retain, as the Estate's liquidated damages, the deposit of the Buyer should the Purchase Agreement be cancelled by the Buyer or, alternatively, the Trustee may return the Buyer's deposit, at the Trustee's discretion.

18.    To the extent there is any tax liability to the Estate from the sale, the Trustee is authorized to pay such taxes from the net proceeds generated from the sale.

19.    The overbidding procedures in the Motion are approved.

20.    All occupants of the Property shall vacate and remove all personal possessions no later than two days following entry of this Order.

21.    The Trustee, in his capacity as the Chapter 7 trustee of the Debtors' Estate, shall act as custodian of any and all items of personal property left on the Property when possession of the Property is taken.

1341022.1

27

MOTION

22. The United States Marshal, or other law enforcement agency, in taking possession of the Property, shall employ whatever reasonable force is necessary to enter the Property, regardless of whether the Property is locked or unlocked, occupied or unoccupied.

23. Anyone interfering with the enforcement of the Order shall be subject to arrest by the United States Marshal, or other law enforcement agency.

24. The Trustee is authorized to hire and pay all reasonable and necessary fees and expenses to a locksmith to assist in taking possession of the Property and to pay all reasonable and necessary fees and expenses associated with the United States Marshal or other law enforcement agency.

25. The Trustee is authorized to remove, store and/or dispose of any personal property that is left on the Property without further notice or order of this Court, free and clear of any claims or interests of any party and the Trustee will be authorized to pay all reasonable and necessary fees and expenses associated with the removal, storage and disposal.

26. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  September 21, 2021          WEILAND GOLDEN GOODRICH LLP

By:  */s/ David M. Goodrich*
     DAVID M. GOODRICH
     General Counsel for Chapter 7 Trustee
     Richard A. Marshack

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1

28

MOTION

1

2

## DECLARATION OF RICHARD A. MARSHACK[6]

3

I, Richard A. Marshack, declare as follows:

4        1.        I am the Chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of

5    the debtors Fariborz Zanjanee Babaee and Malihe P. Babaee ("Debtors").  I know each of

6    the following facts to be true of my own personal knowledge, except as otherwise stated,

7    and, if called as a witness, I could and would competently testify with respect thereto.  I

8    make this declaration in support of the *Motion for Order: (1) Authorizing Sale of Real*

9    *Property Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. §§ 363(b)*

10    *and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and*

11    *Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing*

12    *Payment of Undisputed Liens, Real Estate Broker's Commissions, Agent's Administrative*

13    *Claim, and Other Ordinary Costs of Sale; and (5) Directing all Occupants of the Property*

14    *to Vacate the Property and Remove all Personal Property* ("Motion").

15        2.        Attached as **Exhibit 1** is a true and correct copy of the relevant portion of

16    Schedules A/B, C and D.

17        3.        Attached as **Exhibit 2** is a true and correct copy of the Agent's Order.

18        4.        Attached as **Exhibit 4** is a true and correct copy of the Title Report.

19        5.        Attached as **Exhibit 5** is a true and correct copy of the Claims Register.

20        6.        I seek approval of the proposed Purchase Agreement, a true and correct

21    copy of which is attached as **Exhibit 6**.  I am holding the proposed Buyer's Deposit.

22        7.        Subject to Court approval, I have entered into the Settlement Agreements

23    with (1) Comerica, and (2) CNB and the Liquidating Trust regarding a conditional sale of

24    the Property, subject to Court approval of the Settlement Agreements and the underlying

25    sale.  Among other things, the Settlement Agreements provide for the subordination and

26    _____

27        [6] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 transfer of the VEDC and Comerica liens.  On August 17, 2021, I caused the 9019 Motion

2 and related notice to be filed.  The Debtors subsequently filed their objection and request

3 for hearing on the 9019 Motion.  The 9019 Motion will be heard concurrently with this

4 Motion.

5      8.    I believe the proposed sale is fair and reasonable, within the proper exercise

6 of my business judgment, and is in the best interest of the Estate.  Based on the Broker's

7 advice, I believe the Buyer is offering fair market value for the Property.  The anticipated

8 sale of the Property has been negotiated in good faith with the Buyer in "arms'-length"

9 discussions.  I have no relationship with the Buyer.  Moreover, the sale will be conducted

10 in a commercially reasonable manner following appropriate notice, with an opportunity for

11 overbids.

12      9.    I have been advised that no capital gains taxes will be recognized from a

13 sale of the Property.  Should any tax liability result from the sale, it will be paid from the

14 net proceeds.

15      10.    I am informed that the sale of the Property will generate approximately

16 $228,000.00 for the benefit of the Estate plus an additional amount to pay costs of sale.

17      11.    All real property taxes owed will be paid in full through escrow.

18      I declare under penalty of perjury that the foregoing is true and correct.

19      Executed on this ___ day of September, 2021, at _____, California.

20

21                                       Richard A. Marshack

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

## DECLARATION OF CLARENCE YOSHIKANE[7]

I, Clarence Yoshikane, declare as follows:

1.    I am a real estate agent duly licensed in the State of California and employed with Berkshire Hathaway HomeServices California Properties ("Broker"), located at 1400 Newport Center Drive, Suite 200, Newport Beach, California 92660, telephone (714) 606-5765.  I am familiar with the value of real property in the area where the Property is located.  I make this declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Authorizing Sale of Real Property Free and Clear of Liens, Claims, and Interests Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. § 363(m); (4) Authorizing Payment of Undisputed Liens, Real Estate Broker's Commissions, Agent's Administrative Claim, and Other Ordinary Costs of Sale; and (5) Directing all Occupants of the Property to Vacate the Property and Remove all Personal Property* ("Motion").

2.    I am the agent primarily responsible for marketing the Property for sale.

3.    I have listed the Property for sale in the Orange County Multiple Listing Service.  The listing is also available on numerous real property websites.  To date, approximately 46 potential buyers have toured the Property.  I have received and responded to approximately 86 inquiries from agents and approximately 41 inquiries from potential buyers regarding the Property, and have attended and overseen the showing of the Property to prospective buyers.  A total of 11 offers have been received.  Six offers were for a lower purchase price, two offers were withdrawn, and three offers were at listing price.  I am continuing to market the Property for overbids.  Prior to the sale hearing, I will publish the details of the hearing and the overbid procedures in the MLS.

---

[7] All capitalized terms have the same meaning or definition as the capitalized terms in the Motion.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

4.      Based on my experience and investigation of surrounding property values, I believe the Purchase Price represents fair market value for the Property.

5.      Attached as **Exhibit 3** is a true and correct copy of the landscaping expense statement, invoices and checks.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _21st_ day of September, 2021, at Newport Beach, California.

_____
Clarence Yoshikane

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1341022.1                                32                                MOTION

Weiland Golden Goodrich LLP

650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## DECLARATION OF ANDREW TAN

I, Andrew Tan, hereby declare and state as follows:

1.    I know each of the following facts to be true of my own personal knowledge except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.    I am one of the proposed buyers for the real property at 508 Westminster Avenue, Newport Beach, California 92663 ("Property").

3.    I have no connection or relationship with Richard A. Marshack, the Chapter 7 Trustee ("Trustee").  Until I entered into negotiations with the Trustee to purchase the Property, I had never met or heard of the Trustee.

4.    I am not a creditor of Fariborz Zanjanee Babaee, Malihe P. Babaee, the Honorable Theodor C. Albert or Peter Anderson.

5.    I have negotiated the purchase of the Property from the Trustee in good faith.  I have not colluded with anyone regarding the purchase of the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___20___ day of September, 2021, at __Hacienda Heights__, California.

DocuSigned by:

*Andrew Tan*

Andrew Tan

1341022.1

33

MOTION

# <u>DECLARATION OF JENNY HUANG</u>

I, Jenny Huang, hereby declare and state as follows:

1.      I know each of the following facts to be true of my own personal knowledge except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.      I am one of the proposed buyers for the real property at 508 Westminster Avenue, Newport Beach, California 92663 ("Property").

3.      I have no connection or relationship with Richard A. Marshack, the Chapter 7 Trustee ("Trustee").  Until I entered into negotiations with the Trustee to purchase the Property, I had never met or heard of the Trustee.

4.      I am not a creditor of Fariborz Zanjanee Babaee, Malihe P. Babaee, the Honorable Theodor C. Albert or Peter Anderson.

5.      I have negotiated the purchase of the Property from the Trustee in good faith.  I have not colluded with anyone regarding the purchase of the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this  20   day of September, 2021, at  Hacienda Heights  California.

DocuSigned by:

Jenny Huang

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1341022.1

34

MOTION

# EXHIBIT 1

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Fariborz Zanjanee Babaee** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | **Malihe P. Babaee** |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |

☐ Check if this is an
amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

1.1

**508 Westminster Ave.**
Street address, if available, or other description

**Newport Beach    CA    92663-0000**
City                     State    ZIP Code

**Orange**
County

**What is the property?** Check all that apply

☑ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,898,688.00** | **$2,898,688.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

☐ Check if this is community property
(see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................=>**

| |
|---|
| **$2,898,688.00** |

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

EXHIBIT 1    PAGE 35

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Fariborz Zanjanee Babaee** | |
| | First Name / Middle Name / Last Name | |
| Debtor 2 | **Malihe P. Babaee** | |
| (Spouse if, filing) | First Name / Middle Name / Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | | |

☐ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own <br> Copy the value from *Schedule A/B* | Amount of the exemption you claim <br> *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **508 Westminster Ave. Newport Beach, CA 92663  Orange County** <br> Line from *Schedule A/B*: **1.1** | $2,898,688.00 | ☑ $175,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.730** |
| **Household goods and furnishings** <br> Line from *Schedule A/B*: **6.1** | $3,000.00 | ☑ $3,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **TV. Cell Phones, Computers, etc.** <br> Line from *Schedule A/B*: **7.1** | $1,000.00 | ☑ $1,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Handgun .38 Calibur** <br> Line from *Schedule A/B*: **10.1** | $200.00 | ☑ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |
| **Clothing** <br> Line from *Schedule A/B*: **11.1** | $1,000.00 | ☑ $1,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **C.C.P. § 704.020** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**EXHIBIT 1    PAGE 36**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Fariborz Zanjanee Babaee** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | **Malihe P. Babaee** |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                 12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|
| **2.1   Comerica Bank**<br>Creditor's Name | $449,325.00 | $2,898,688.00 | $0.00 |

| | |
|---|---|
| Describe the property that secures the claim: | **508 Westminster Ave. Newport Beach, CA 92663  Orange County** |

**P.o. Box 71203**
**Philadelphia, PA 19176**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

| | | | |
|---|---|---|---|
| | **Opened 07/15  Last Active 8/13/18** | | |
| Date debt was incurred | | Last 4 digits of account number | **0001** |

Debtor 1 **Fariborz Zanjanee Babaee**
First Name _____ Middle Name _____ Last Name

Debtor 2 **Malihe P. Babaee**
First Name _____ Middle Name _____ Last Name

Case number (if known) _____

| 2.2 | First Choice Bank | Describe the property that secures the claim: | $150,000.00 | $2,898,688.00 | $0.00 |

Creditor's Name

**508 Westminster Ave. Newport Beach, CA 92663  Orange County**

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

_____
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

| 2.3 | INTERNAL REVENUE SERVICE | Describe the property that secures the claim: | $104,035.00 | $2,898,688.00 | $0.00 |

Creditor's Name

**508 Westminster Ave. Newport Beach, CA 92663  Orange County**

**PO BOX 7346
Philadelphia, PA 19101**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

| 2.4 | Mercedes Benz Financial | Describe the property that secures the claim: | $0.00 | $0.00 | $0.00 |

Creditor's Name

**36455 Corporate Dr
Farmington Hills, MI 48331**
Number, Street, City, State & Zip Code

**2017 Mercedes Benz CE300 25000 miles
Leased vehicle**

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Who owes the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [x] At least one of the debtors and another
- [ ] Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

Debtor 1    **Fariborz Zanjanee Babaee**
     First Name          Middle Name          Last Name

Debtor 2    **Malihe P. Babaee**
     First Name          Middle Name          Last Name

Case number (if known) _____

---

| 2.5 | **Orange County Treasurer** | | $29,914.00 | $2,898,688.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

> **508 Westminster Ave. Newport Beach, CA 92663  Orange County**

**P.O. Box 1438**
**Santa Ana, CA**
**92702-1438**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

■ Debtor 1 only
☐ An agreement you made (such as mortgage or secured car loan)
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ At least one of the debtors and another
☐ Judgment lien from a lawsuit
☐ **Check if this claim relates to a community debt**
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.6 | **Shellpoint Mortgage Servicing** | | $1,492,972.00 | $2,898,688.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

> **508 Westminster Ave. Newport Beach, CA 92663  Orange County**

**Attn: Bankruptcy**
**Po Box 10826**
**Greenville, SC 29603**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

☐ Debtor 1 only
☐ An agreement you made (such as mortgage or secured car loan)
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ Statutory lien (such as tax lien, mechanic's lien)
■ At least one of the debtors and another
☐ Judgment lien from a lawsuit
☐ **Check if this claim relates to a community debt**
☐ Other (including a right to offset) _____

**Opened**
**09/14  Last**
**Active**
Date debt was incurred **6/14/18**    Last 4 digits of account number **5188**

---

EXHIBIT 1    PAGE 39

| Debtor 1 | **Fariborz Zanjanee Babaee** | | | Case number (if known) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Malihe P. Babaee** | | | | |
| | First Name | Middle Name | Last Name | | |

---

| 2.7 | **Us Bank** | Describe the property that secures the claim: | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2018 Land Rover Range Rover Sport
16000 miles
Leased vehicle**

**4325 17th Ave. S
Fargo, ND 58125**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.8 | **Valley Economic Development Center,** | Describe the property that secures the claim: | $425,000.00 | $2,898,688.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**c/o Levene, Neale,
Bender Yoo & Bri
10250 Constellation Blvd.
Ste 1700
Los Angeles, CA 90067**

Number, Street, City, State & Zip Code

**508 Westminster Ave. Newport
Beach, CA 92663  Orange County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

---

| | | |
|---|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | | $2,651,246.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | | $2,651,246.00 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

EXHIBIT 1    PAGE 40

# EXHIBIT 2

1  RICHARD A. MARSHACK
   rmarshack@marshackhays.com
2  MARSHACK HAYS LLP
   870 Roosevelt
3  Irvine, CA 92620
   Telephone: (949) 333-7777
4  Facsimile: (949) 333-7778

5  Chapter 7 Trustee

**FILED & ENTERED**

**JUN 11 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

6

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

10

11  In re                              Case No. 8:20-bk-10268-TA

12  FARIBORZ ZANJANEE BABAEE           Chapter 7
    MALIHE P. BABAEE,
13                                     ORDER GRANTING APPLICATION BY
                                       CHAPTER 7 TRUSTEE TO EMPLOY
14                                     REAL ESTATE AGENT

15              Debtors.              [Unopposed Motion – No Service of Proposed
                                      Order or Lodgment Period Required Pursuant
16                                    to LBR 9021-1(b)(4)]

17

18

19

20      The Court having read and considered the Chapter 7 Trustee's Application to Employ

21  Clarence Yoshikane of Coldwell Banker Real Estate as the Trustee's  Real Estate Agent (the

22  "Application") May 22, 2020 as Docket No. 45 and, it appearing that proper notice has been given

23  and good cause has been shown, the Court makes its Order as follows:

24  / / /

25

26  / / /

27

28

                              1

5000-480

EXHIBIT 2    PAGE 41

IT IS ORDERED:

1. The Application is approved;

2. The Trustee is authorized to employ Clarence Yoshikane of Coldwell Banker Real Estate as the Estate's Real Estate Agent ("Agent") to market and sell real property located at 508 Westminster Avenue, Newport Beach, on the terms and conditions set forth in the Application;

3. Agent's fees and costs are to be paid as set forth in the Application and upon further application and approval of this Court;

4. Agent is authorized to advance up to $5,000 to make repairs and improvements, pay utilities and other miscellaneous expenses as deemed prudent in marketing the Property; and

5. Trustee is empowered to execute the Listing Agreement.

# # #

Date: June 11, 2020

*Theodor C. Albert*

Theodor C. Albert
United States Bankruptcy Judge

2

5000-480

EXHIBIT 2    PAGE 42

# EXHIBIT 3

| Statement number: | BABAEE / 508 Westminster |
|---|---|

# Expense Statement

**Employee information**

| | |
|---|---|
| Name | Clarence Yoshikane |
| Property Address | 508 Westminster, Newport Beach |
| Position | Listing Agent |

**Pay period**

| | |
|---|---|
| From | 6/24/2020 |
| To | 7/28/2020 |

| Date | Account | Description | Column1 | Column2 | Column3 | Column4 | Column5 | Column6 | Expense | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/24/2020 | Javier Avalos | Landscaping (May & June) | | | | | | $ | 90.00 | $ 90.00 |
| 7/28/2020 | Javier Avalos | Landscaping (July) | | | | | | | 45.00 | 45.00 |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | | | | | | | | - |
| | | | $ - | $ - | $ - | $ - | $ - | $ - | $ | 135.00 |

| | | |
|---|---|---|
| | Subtotal | $ 135.00 |
| | Advances | |
| | TOTAL | $ 135.00 |

| Approved by | Notes |
|---|---|
| | |

*For Office Use Only*

EXHIBIT 3    PAGE 43

**INVOICE** DATE 6/30 20 20

NAME & ADDRESS Jennifer Toyama
Clarence Yoshikane

| LAWN SERVICE MOW, EDGE AND CLEAN | FULL | YES | NO |
|---|---|---|---|
| | WEEKLY | OTHER | |

GARDEN SERVICE

PRUNE AND TRIM

CLEAN-UP

FERTILIZER

SEED & TOPPING

PLANTS & COLOR

IRRIGATION SPRINKLERS

PLANTER WORK  508 Westminster
SPRAY  Ave  Newport Beach
May                    45.00
JUNE                   45.00

Ascension Irvine
CA 92612

TOTAL  90.00

GARDENER  Javier Avalos
(562) 361-0563
5325 orange Ave Spc D15
aramount, CA     90723

---

Check #419

CLARENCE T YOSHIKANE
PH. 714.606.5765

BABAEE
MANSHACK Cr7  DATE 6/24/2020

PAY TO THE ORDER OF  Javier Avalos          $ 90.00

Nmety 00/100                    DOLLARS

UnionBank
(800) 238-4486
unionbank.com
LANDSCAPE
MAY JUNE

FOR 508 Westminster

⑈122000496⑈ 0073862740⑈ 0419

Scanned with CamScanner

EXHIBIT 3    PAGE 44

INVOICE

DATE 7/31 20 20

NAME & ADDRESS  Jennifer Toyama
Clavence
YOShi Kane

**LAWN SERVICE**

MOW, EDGE, AND CLEAN   FULL   YES ☐   NO ☐
WEEKLY ☐   OTHER ☐

**GARDEN SERVICE**   508 Westminister

**PRUNE AND TRIM**   Newport Beach CA

**CLEAN-UP**

**FERTILIZER**

**SEED & TOPPING**

**PLANTS & COLOR**

**IRRIGATION SPRINKLERS**   ASEension Irvine

**PLANTER WORK**   CA 92612

**SPRAY**

TOTAL   45. 00

GARDENER  Javier Avalos
(562) 361-0563
15325 Orange Ave spc D15
Paramount CA 90723

Scanned with CamScanner

EXHIBIT 3   PAGE 45



Scanned with CamScanner

EXHIBIT 3 PAGE 46

# EXHIBIT 4

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800  •  Fax: (949) 341-0251

Issuing Policies of Fidelity National Title Insurance Company

---

Title Officer: **Blake Uradomo**
Phone: **(949) 788-2855**
Fax: **(949) 341-0251**
Email: **Blake.Uradomo@fnf.com**

ORDER NO.: **00361719-997-OC1-245**

LOAN NO.:

A&A Escrow Services, Inc.
415 North Crescent Drive, Suite 320
Beverly Hills, CA 90210

ATTN:     Antonia Delgado
YOUR REF:

PROPERTY:     **508 Westminster Avenue, Newport Beach, CA**

---

## AMENDED **PRELIMINARY REPORT**

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida Corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned by:

Authorized Signature

---

EXHIBIT 4     PAGE 47



**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800  ●  Fax: (949) 341-0251

## AMENDED **PRELIMINARY REPORT**

---

**EFFECTIVE DATE:**                **August 6, 2021 at 7:30 a.m., Amended: August 30, 2021, Amendment No. 01**

**ORDER NO.:  00361719-997-OC1-245**

The form of policy or policies of title insurance contemplated by this report is:

     **ALTA Homeowner's Policy of Title Insurance (12-2-13)**
     **ALTA Extended Loan Policy (6-17-06)**

1.     THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED
BY THIS REPORT IS:

     **A Fee**

2.     TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

     **Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants**

3.     THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

     **See Exhibit A attached hereto and made a part hereof.**

EXHIBIT 4    PAGE 48

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:  00361719-997-OC1-245

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 3 IN BLOCK 30 OF FIRST ADDITION TO NEWPORT HEIGHTS, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 4 PAGES 94 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, CALIFORNIA.

APN:  **425-092-24**

PRELIMINARY REPORT                                                                                    Fidelity National Title Company
YOUR REFERENCE:                                                                          ORDER NO.: 00361719-997-OC1-245

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2021-2022.

2.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

    Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for payment thereof.

3.  Easement(s) for the purpose(s) shown below and rights incidental thereto as reserved in a document;

    | | |
    |---|---|
    | Reserved by: | The Irvine Company To La Habra Valley Land and Water Company |
    | Purpose: | Necessary ditches, pipe lines and flumes over said land |
    | Recording Date: | January 3, 1913 |
    | Recording No.: | Book 224, Page 328, Deeds |
    | Affects: | A portion of said land |

4.  Matters contained in that certain document

    | | |
    |---|---|
    | Entitled: | Encroachment Agreement |
    | Dated: | January 19, 2005 |
    | Executed by: | Gilbert A. Ayala, Trustee of The Gilbert A. Ayala Trust and the City of Newport Beach, California, a Municipal Corporation |
    | Recording Date: | January 26, 2005 |
    | Recording No.: | 2005-64040, Official Records |

    Reference is hereby made to said document for full particulars

5.  A deed of trust to secure an indebtedness in the amount shown below,

    | | |
    |---|---|
    | Amount: | $1,500,000.00 |
    | Dated: | September 22, 2014 |
    | Trustor/Grantor: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants |
    | Trustee: | Fidelity National Title Company, a Nebraska Corporation |
    | Beneficiary: | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for New Penn Financial, LLC, a Limited Liability Corporation |
    | Loan No.: | 4514080027 |
    | Recording Date: | September 29, 2014 |
    | Recording No.: | 2014-395001, Official Records |

    By various assignments, the beneficial interest thereunder is now held of record in:

    | | |
    |---|---|
    | Assignee: | Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not in its Individual Capacity but Solely as Trustee on behalf of CSMC Trust 2015-WIN1, its successor and assigns |
    | Loan No.: | 0560455188 |
    | Recording Date: | December 6, 2018 |
    | Recording No.: | 2018-456428, Official Records |

EXHIBIT 4    PAGE 50

PRELIMINARY REPORT                                         Fidelity National Title Company
YOUR REFERENCE:                                            ORDER NO.: 00361719-997-OC1-245

## EXCEPTIONS
### (Continued)

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Quality Loan Service Corporation |
| Recording Date: | March 8, 2019 |
| Recording No.: | 2019-72418, Official Records |

A Notice of Default under the terms of said trust deed

| | |
|---|---|
| Executed By: | Quality Loan Service Corporation |
| Recording Date: | March 14, 2019 |
| Recording No.: | 2019-80113, Official Records |

A notice of Trustee's Sale under said deed of trust

| | |
|---|---|
| Executed By: | Quality Loan Service Corporation |
| Time and Place of Sale: | July 24, 2019 At 1:30 PM, At the North front entrance to the County Courthouse located at 700 Civic Center Drive west, Santa Ana, CA 92701 |
| Recording Date: | July 2, 2019 |
| Recording No.: | 2019-233631, Official Records |

6.    An assignment of all the moneys due, or to become due as rental, as additional security for the obligations secured by deed of trust shown as Item no. 5

| | |
|---|---|
| Assigned to: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants and First Choice Bank |
| Recording Date: | June 4, 2015 |
| Recording No.: | 2015-290301, Official Records |

7.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $150,000.00 |
| Dated: | May 27, 2015 |
| Trustor/Grantor: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants |
| Trustee: | First Choice Bank |
| Beneficiary: | First Choice Bank |
| Loan No.: | 60126 |
| Recording Date: | June 4, 2015 |
| Recording No: | 2015-290300, Official Records |

8.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $408,000.00 |
| Dated: | July 29, 2015 |
| Trustor/Grantor: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife |
| Trustee: | Comerica Bank |
| Beneficiary: | Comerica Bank, a Texas Banking Association |
| Loan No.: | None Shown |
| Recording Date: | August 11, 2015 |
| Recording No: | 2015-413959, Official Records |

EXHIBIT 4    PAGE 51

## EXCEPTIONS
### (Continued)

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Affinia Default Services, LLC |
| Recording Date: | January 16, 2019 |
| Recording No.: | 2019-14543, Official Records |

A Notice of Default under the terms of said trust deed

| | |
|---|---|
| Executed By: | Affinia Default Services, LLC |
| Recording Date: | January 18, 2019 |
| Recording No.: | 2019-17581, Official Records |

9.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $380,000.00 |
| Dated: | January 14, 2016 |
| Trustor/Grantor: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | Valley Economic Development Center, Inc. |
| Loan No.: | None Shown |
| Recording Date: | January 20, 2016 |
| Recording No: | 2016-25054, Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | S.B.S. Trust Deed Network, a California Corporation |
| Recording Date: | February 16, 2018 |
| Recording No.: | 2018-56433, Official Records |

A Notice of Default under the terms of said trust deed

| | |
|---|---|
| Executed By: | S.B.S. Trust Deed Network, a California Corporation |
| Recording Date: | August 14, 2018 |
| Recording No.: | 2018-295594, Official Records |

10.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $120,000.00 |
| Dated: | January 6, 2016 |
| Trustor/Grantor: | Fariborz Z. Babaee and Malihe P. Babaee, husband and wife as joint tenants |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | Valley Economic Development Center, Inc. |
| Loan No.: | None Shown |
| Recording Date: | January 20, 2016 |
| Recording No: | 2016-25055, Official Records |

The effect of a full reconveyance recorded February 27, 2017 at 2017-80682, Official Records, which purports to reconvey the above-mentioned Deed of Trust.

EXHIBIT 4    PAGE 52

## EXCEPTIONS
### (Continued)

No statement is made hereto as to the effect or validity of said reconveyance.

The requirement that this Company be furnished with confirmation from the lender that the Deed of Trust has been released prior to issuance of a policy of title insurance.

11.    An abstract of  judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $170,457.57 |
| Debtor: | Fariborz Z. Babaee |
| Creditor | Branch Banking and Trust Company |
| Date Entered: | February 4, 2019 |
| County: | Orange |
| Court: | Superior Court of California |
| Case No. | CV 2:19-mc-00017-UA |
| Recording Date: | September 25, 2019 |
| Recording No: | 2019-369359, Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

### END OF EXCEPTIONS

---

EXHIBIT 4    PAGE 53

PRELIMINARY REPORT
YOUR REFERENCE:

Fidelity National Title Company
ORDER NO.:  00361719-997-OC1-245

## REQUIREMENTS SECTION

1.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

        Party(s):                All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE: The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

**END OF REQUIREMENTS**

---

EXHIBIT 4    PAGE 54

# INFORMATIONAL NOTES SECTION

1.  Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

2.  None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

3.  Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Dwelling, known as 508 Westminster Avenue, Newport Beach, California to an Extended Coverage Loan Policy.

4.  Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration provision. Arbitrable matters may include, but are not limited to any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance Coverage.

5.  Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

6.  Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

7.  Note: Property taxes for the fiscal year shown below are PAID. For proration purposes the amounts were:

    | | |
    |---|---|
    | Tax Identification No.: | 425-092-24 |
    | Fiscal Year: | 2020-2021 |
    | 1st Installment: | $13,419.77 |
    | 2nd installment: | $13,419.77 |
    | Exemption: | $7,000.00 |
    | Land: | $1,228,636.00 |
    | Improvements: | $1,293,379.00 |
    | Code Area: | 07-001 |
    | Personal Property: | $0.00 |

8.  Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

9.  Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

10. If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

EXHIBIT 4    PAGE 55

PRELIMINARY REPORT                                                        Fidelity National Title Company
YOUR REFERENCE:                                                        ORDER NO.:  00361719-997-OC1-245

# INFORMATIONAL NOTES
### (Continued)

11.    Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third party service. If the above requirements cannot be met, please call the Company at the number provided in this report

12.    NOTE: Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

13.    Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows:

Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

---

### END OF INFORMATIONAL NOTES

Blake Uradomo/anj

**WIRE SAFE** ™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

EXHIBIT 4    PAGE 57



**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800   ●   Fax: (949) 341-0251

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

### Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00361719-997-OC1-245

EXHIBIT 4     PAGE 59

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

# ATTACHMENT ONE (Revised 05-06-16)

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a. building;

   b. zoning;

   c. land use;

   d. improvements on the Land;

   e. land division; and

   f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:

   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

Attachment One – CA (Rev. 05-06-16)                                                                                               Page 1

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 4    PAGE 62

   c.   that result in no loss to You; or
   d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
   a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.   in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
•   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | **Your Deductible Amount** | **Our Maximum Dollar Limit of Liability** |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)   the character, dimensions, or location of any improvement erected on the Land;
      (iii)   the subdivision of land; or
      (iv)   environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
   (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
   (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c)   resulting in no loss or damage to the Insured Claimant;
   (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a)   a fraudulent conveyance or fraudulent transfer, or
   (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 4    PAGE 63

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses,  that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7. {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

EXHIBIT 4    PAGE 64

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**EXHIBIT 4     PAGE 65**



EXHIBIT 4    PAGE 66

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone: (949) 788-2800    •    Fax: (949) 341-0251

## STATEMENT OF INFORMATION
## CONFIDENTIAL INFORMATION FOR YOUR PROTECTION

Escrow No.:    **00361719-997-OC1-245**                                              Title No.:

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents. Complete all blanks (please print) or indicate "none" or "N/A". If more space is needed for any item(s), use the reverse side of the form. Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

## NAME AND PERSONAL INFORMATION

Date of Birth:_____

First Name                Middle/Maiden Name (if none, indicate)        Last Name

Home Phone: _____ Business Phone: _____ Birthplace:_____

Cell Phone: _____ Fax: _____ Email: _____

Social Security No.: _____ Driver's License No.: _____

List any other name you have used or been known by: _____

State of residence: _____ I have lived continuously in the U.S.A. since _____

Are you currently married? _____ **IF YES, COMPLETE THE FOLLOWING INFORMATION:**

Date and place of marriage:        _____

Spouse: _____ Date of Birth:_____
First Name        Middle/Maiden Name (if none, indicate)        Last Name

Home Phone: _____ Business Phone: _____ Birthplace: _____

Cell Phone: _____ Fax:_____ Email: _____

Social Security No.: _____ Driver's License No.: _____

List any other name you have used or been known by: _____

State of residence: _____ I have lived continuously in the U.S.A. since _____

Are you currently a registered domestic partner? _____ **IF YES, COMPLETE THE FOLLOWING INFORMATION:**

Domestic Partner: _____ Date of Birth:_____
First Name        Middle/Maiden Name (if none, indicate)        Last Name

Home Phone: _____ Business Phone: _____ Birthplace: _____

Cell Phone: _____ Fax:_____ Email: _____

Social Security No.: _____ Driver's License No.: _____

List any other name you have used or been known by: _____

State of residence: _____ I have lived continuously in the U.S.A. since _____

## CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

(if more space is required, use reverse side of form)

## RESIDENCES (LAST 10 YEARS)

Number & Street                    City                            From (date) to (date)

Number & Street                    City                            From (date) to (date)

(if more space is required, use reverse side of form)

## OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

Firm or Business Name              Address                          From (date) to (date)

Firm or Business Name              Address                          From (date) to (date)

(if more space is required, use reverse side of form)

## SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|

(if more space is required, use reverse side of form)

## PRIOR MARRIAGE(S)

Any prior marriages for either spouse? _____ **IF YES, COMPLETE THE FOLLOWING INFORMATION:**

Prior spouse's (Party A) name: _____   Prior Spouse of Party A: _____

Marriage ended by:  ☐  Death   ☐  Divorce   Date of Death/Divorce: _____

Prior spouse's (Party B) name: _____   Prior Spouse of Party B: _____

Marriage ended by:  ☐  Death   ☐  Divorce   Date of Death/Divorce: _____

(if more space is required, use reverse side of form)

## PRIOR DOMESTIC PARTNERSHIP(S)

Any prior domestic partnerships for either person? _____   **IF YES, COMPLETE THE FOLLOWING INFORMATION:**

Prior partner's name: _____   Prior Partner: _____

Partnership ended by: ☐ Death  ☐ Dissolution  ☐ Nullification  ☐ Termination Date of Death/Dissolution/etc.: _____

Prior partner's name: _____   Prior Partner: _____

Partnership ended by: ☐ Death  ☐ Dissolution  ☐ Nullification  ☐ Termination Date of Death/Dissolution/etc.: _____

(if more space is required, use reverse side of form)

## INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction:   ☐  Yes   ☐  No

## OWNER TO COMPLETE THE FOLLOWING ITEMS

Street Address of Property in this transaction: _____

The land is  ☐   unimproved; or improved with a structure of the following type: ☐  A Single or 1-4 Family   ☐  Condo Unit   ☐   Other

Improvements, remodeling or repairs to this property have been made within the past six (6) months: ☐  Yes  ☐  No

If yes, have all costs for labor and materials arising in connection therewith been paid in full?   ☐   Yes  ☐  No

Any current loans on property? _____   **IF YES, COMPLETE THE FOLLOWING INFORMATION:**

Lender: _____   Loan Amount: _____   Loan Account No.: _____

Lender: _____   Loan Amount: _____   Loan Account No.: _____

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____   _____
Signature                                     Date

_____
Print Name

_____   _____
Signature                                     Date

_____
Print Name

**(NOTE:  IF APPLICABLE, BOTH SPOUSES/DOMESTIC PARTNERS MUST SIGN.)**

**THANK YOU.**

Statement of Information                                        Last Saved:  8/30/2021 11:22 AM by 000
MISC0008 (DSI Rev. 03/26/20)            Page 2            Order No.: 00361719-997-OC1-245

EXHIBIT 4    PAGE 68

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor, Newport Beach, CA 92660
Phone:  (949) 788-2800   ●   Fax:  (949) 341-0251

## CREDIT LINE / EQUITY LINE OF CREDIT CLOSURE REQUEST

Date:  _____

To:  _____

_____

_____

_____

**Attention:**  Payoff Dept.
**Reference:**  Account/Loan # _____
**Property Address:**        508 Westminster Avenue, Newport Beach, CA 92663

To Whom It May Concern:

Please accept this letter as a request to close/freeze the above-referenced credit line or equity line of credit as of this date.

I/We agree not to request any advances on this account on or after the date of this letter.

You will be receiving payment in full from the proceeds of our escrow transaction. Upon receipt of payoff, please send your Reconveyance or Release of Lien to:

**Fidelity National Title Company**
1300 Dove Street, 3rd Floor
Newport Beach, CA 92660
Attn:  Blake Uradomo
Ref:  00361719-997-245

Sincerely,

_____          _____

_____          _____

_____          _____

(All borrowers must sign)

REQ00001 (Rev. 12/5/2012)

EXHIBIT 4    PAGE 69

# EXHIBIT 5

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

 **CM/ECF**    Query    Reports ▾    Utilities ▾    Help    Log Out

# Central District of California
# Claims Register

### 8:20-bk-10268-TA Fariborz Zanjanee Babaee and Malihe P. Babaee

|  |  |
|---|---|
| **Judge:** Theodor Albert | **Chapter:** 7 |
| **Office:** Santa Ana | **Last Date to file claims:** 07/13/2020 |
| **Trustee:** Richard A Marshack (TR) | **Last Date to file (Govt):** 07/27/2020 |

| *Creditor:* (40245382)<br>PYOD, LLC<br>Resurgent Capital Services<br>PO Box 19008<br>Greenville, SC 29602 | **Claim No: 1**<br>*Original Filed Date:* 04/13/2020<br>*Original Entered Date:* 04/13/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Julia Doan<br>*Modified:* |
|---|---|---|
| Amount claimed: $491.49<br>Secured claimed: $0.00 | | |
| *History:* | | |
| Details   1-1   04/13/2020 Claim #1 filed by PYOD, LLC, Amount claimed: $491.49 (Doan, Julia) | | |
| *Description:* | | |
| *Remarks:* | | |

| *Creditor:* (40245388)<br>LVNV Funding, LLC<br>Resurgent Capital Services<br>PO Box 10587<br>Greenville, SC 29603-0587 | **Claim No: 2**<br>*Original Filed Date:* 04/13/2020<br>*Original Entered Date:* 04/13/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Julia Doan<br>*Modified:* |
|---|---|---|
| Amount claimed: $13392.53<br>Secured claimed: $0.00 | | |
| *History:* | | |
| Details   2-1   04/13/2020 Claim #2 filed by LVNV Funding, LLC, Amount claimed: $13392.53 (Doan, Julia) | | |
| *Description:* | | |
| *Remarks:* | | |

| *Creditor:* (40248668)<br>Quantum3 Group LLC as agent for<br>Velocity Investments LLC<br>PO Box 788<br>Kirkland, WA 98083-0788 | **Claim No: 3**<br>*Original Filed Date:* 04/15/2020<br>*Original Entered Date:* 04/15/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Kayla N Klabunde<br>*Modified:* |
|---|---|---|
| Amount claimed: $15515.97 | | |
| *History:* | | |
| Details   3-1   04/15/2020 Claim #3 filed by Quantum3 Group LLC as agent for, Amount claimed: $15515.97 (Klabunde, Kayla) | | |
| *Description:* (3-1) Money Loaned | | |
| *Remarks:* | | |

| *Creditor:* (40110957)<br>INTERNAL REVENUE SERVICE | **Claim No: 4**<br>*Original Filed Date:* 04/16/2020 | *Status:*<br>*Filed by:* CR |
|---|---|---|

EXHIBIT 5    PAGE 70

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

| PO BOX 7346 Philadelphia, PA 19101 | *Original Entered Date:* 04/16/2020 | *Entered by:* Timothy C Schakow *Modified:* |
|---|---|---|

Amount  claimed: $95318.44
Secured claimed: $94468.44
Priority  claimed:    $850.00

*History:*

| Details | 4-1 | 04/16/2020 Claim #4 filed by INTERNAL REVENUE SERVICE, Amount claimed: $95318.44 (Schakow, Timothy) |
|---|---|---|

*Description:*

*Remarks:*

---

| *Creditor:*    (40110962)   History County of Orange P.O. Box 4515 Santa Ana, CA 92702-4515 | **Claim No: 5** *Original Filed Date:* 04/20/2020 *Original Entered Date:* 04/20/2020 | *Status:* *Filed by:* CR *Entered by:* David Scallon *Modified:* |
|---|---|---|

Amount  claimed: $26806.00
Secured claimed: $26806.00

*History:*

| Details | 5-1 | 04/20/2020 Claim #5 filed by County of Orange, Amount claimed: $26806.00 (Scallon, David) |
|---|---|---|

*Description:* (5-1) Real Property Taxes 01-01-2020

*Remarks:* (5-1) BK2000041

---

| *Creditor:*    (40255950) Bank of America, N.A. P O Box 982284 El Paso, TX 79998-2238 | **Claim No: 6** *Original Filed Date:* 04/22/2020 *Original Entered Date:* 04/22/2020 | *Status:* *Filed by:* CR *Entered by:* Jeffrey Randall *Modified:* |
|---|---|---|

Amount  claimed: $10951.90
Secured claimed:     $0.00
Priority  claimed:     $0.00

*History:*

| Details | 6-1 | 04/22/2020 Claim #6 filed by Bank of America, N.A., Amount claimed: $10951.90 (Randall, Jeffrey) |
|---|---|---|

*Description:*

*Remarks:*

---

| *Creditor:*    (40255950) Bank of America, N.A. P O Box 982284 El Paso, TX 79998-2238 | **Claim No: 7** *Original Filed Date:* 04/22/2020 *Original Entered Date:* 04/22/2020 | *Status:* *Filed by:* CR *Entered by:* Jeffrey Randall *Modified:* |
|---|---|---|

Amount  claimed: $3390.41
Secured claimed:     $0.00
Priority  claimed:     $0.00

*History:*

| Details | 7-1 | 04/22/2020 Claim #7 filed by Bank of America, N.A., Amount claimed: $3390.41 (Randall, Jeffrey) |
|---|---|---|

*Description:*

*Remarks:*

---

| *Creditor:*    (40255950) | **Claim No: 8** | *Status:* |
|---|---|---|

EXHIBIT 5    PAGE 71

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

| Bank of America, N.A.<br>P O Box 982284<br>El Paso, TX 79998-2238 | Original Filed Date: 04/22/2020<br>Original Entered<br>Date: 04/22/2020 | Filed by: CR<br>Entered by: Jeffrey Randall<br>Modified: |
|---|---|---|

Amount claimed: $14314.74
Secured claimed:      $0.00
Priority claimed:      $0.00

*History:*

| Details | 8-1 | 04/22/2020 Claim #8 filed by Bank of America, N.A., Amount claimed: $14314.74 (Randall, Jeffrey) |
|---|---|---|

*Description:*

*Remarks:*

| Creditor:      (40269344)<br>First National Bank of Omaha<br>c/o BQ & Associates, P.C., L.L.O.<br>14211 Arbor St, Ste 100<br>Omaha, NE 68144 | **Claim No: 9**<br>Original Filed Date: 04/29/2020<br>Original Entered<br>Date: 04/29/2020 | Status:<br>Filed by: CR<br>Entered by: ePOC-User AutoDocket<br>Modified: |
|---|---|---|

Amount claimed: $16643.86

*History:*

| Details | 9-1 | 04/29/2020 Claim #9 filed by First National Bank of Omaha, Amount claimed: $16643.86 (AutoDocket, ePOC-User) |
|---|---|---|

*Description:*

*Remarks:* (9-1) Account Number (last 4 digits):1909

| Creditor:      (40269353)<br>JPMorgan Chase Bank, N.A.<br>s/b/m/t Chase Bank USA, N.A.<br>c/o Robertson, Anschutz & Schneid, P.L.<br>6409 Congress Avenue, Suite 100<br>Boca Raton, FL 33487 | **Claim No: 10**<br>Original Filed Date: 04/29/2020<br>Original Entered<br>Date: 04/29/2020 | Status:<br>Filed by: CR<br>Entered by: Nathalie Rodriguez<br>Modified: |
|---|---|---|

Amount claimed: $39268.71

*History:*

| Details | 10-1 | 04/29/2020 Claim #10 filed by JPMorgan Chase Bank, N.A., Amount claimed: $39268.71 (Rodriguez, Nathalie) |
|---|---|---|

*Description:*

*Remarks:*

| Creditor:      (40283862)<br>American Express National Bank<br>c/o Becket and Lee LLP<br>PO Box 3001<br>Malvern PA 19355-0701 | **Claim No: 11**<br>Original Filed Date: 05/08/2020<br>Original Entered<br>Date: 05/08/2020 | Status:<br>Filed by: CR<br>Entered by: Greg Deegan<br>Modified: |
|---|---|---|

Amount claimed: $3350.11

*History:*

| Details | 11-1 | 05/08/2020 Claim #11 filed by American Express National Bank, Amount claimed: $3350.11 (Deegan, Greg) |
|---|---|---|

*Description:*

*Remarks:*

| Creditor:      (40283863)<br>American Express National Bank<br>c/o Becket and Lee LLP | **Claim No: 12**<br>Original Filed Date: 05/08/2020<br>Original Entered | Status:<br>Filed by: CR<br>Entered by: Greg Deegan<br>Modified: |
|---|---|---|

EXHIBIT 5     PAGE 72

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

PO Box 3001
Malvern PA 19355-0701

*Date:* 05/08/2020

Amount claimed: $577.37

*History:*

Details    12-1    05/08/2020 Claim #12 filed by American Express National Bank, Amount claimed: $577.37 (Deegan, Greg)

*Description:*

*Remarks:*

---

*Creditor:*    (40283865)
American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

**Claim No: 13**
*Original Filed Date:* 05/08/2020
*Original Entered Date:* 05/08/2020

*Status:*
*Filed by:* CR
*Entered by:* Greg Deegan
*Modified:*

Amount claimed: $558.71

*History:*

Details    13-1    05/08/2020 Claim #13 filed by American Express National Bank, Amount claimed: $558.71 (Deegan, Greg)

*Description:*

*Remarks:*

---

*Creditor:*    (40293618)
American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

**Claim No: 14**
*Original Filed Date:* 05/15/2020
*Original Entered Date:* 05/15/2020

*Status:*
*Filed by:* CR
*Entered by:* Greg Deegan
*Modified:*

Amount claimed: $1859.83

*History:*

Details    14-1    05/15/2020 Claim #14 filed by American Express National Bank, Amount claimed: $1859.83 (Deegan, Greg)

*Description:*

*Remarks:*

---

*Creditor:*    (40326276)
Portfolio Recovery Associates, LLC
c/o Neiman Marcus
POB 41067
Norfolk VA 23541

**Claim No: 15**
*Original Filed Date:* 06/04/2020
*Original Entered Date:* 06/04/2020

*Status:*
*Filed by:* CR
*Entered by:* Janel Decena
*Modified:*

Amount claimed: $9349.43

*History:*

Details    15-1    06/04/2020 Claim #15 filed by Portfolio Recovery Associates, LLC, Amount claimed: $9349.43 (Decena, Janel)

*Description:*

*Remarks:*

---

*Creditor:*    (40110954)
First Choice Bank

**Claim No: 16**
*Original Filed Date:* 06/10/2020
*Original Entered Date:* 06/10/2020

*Status:*
*Filed by:* AT
*Entered by:* George C Lazar
*Modified:*

Amount  claimed: $130594.06
Secured claimed: $130594.06

*History:*

Details    16-1    06/10/2020 Claim #16 filed by First Choice Bank, Amount claimed: $130594.06 (Lazar, George)

EXHIBIT 5    PAGE 73

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

*Description:* (16-1) Claims is oversecured; interest and fees accruing

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (40350596)<br>Atlas Acquisitions LLC<br>294 Union St.<br>Hackensack, NJ 07601 | **Claim No: 17**<br>*Original Filed Date:* 06/22/2020<br>*Original Entered*<br>*Date:* 06/22/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Avi Schild<br>*Modified:* |

Amount claimed: $5433.36
Secured claimed:    $0.00

*History:*

| | | |
|---|---|---|
| Details | 17-1 | 06/22/2020 Claim #17 filed by Atlas Acquisitions LLC, Amount claimed: $5433.36 (Schild, Avi) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (40358017)<br>Department Stores National Bank<br>c/o Quantum3 Group LLC<br>PO Box 657<br>Kirkland, WA 98083-0657 | **Claim No: 18**<br>*Original Filed Date:* 06/26/2020<br>*Original Entered*<br>*Date:* 06/26/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Jennifer A Shepherd<br>*Modified:* |

Amount claimed: $2892.55

*History:*

| | | |
|---|---|---|
| Details | 18-1 | 06/26/2020 Claim #18 filed by Department Stores National Bank, Amount claimed: $2892.55 (Shepherd, Jennifer) |

*Description:* (18-1) Money Loaned

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (40358017)<br>Department Stores National Bank<br>c/o Quantum3 Group LLC<br>PO Box 657<br>Kirkland, WA 98083-0657 | **Claim No: 19**<br>*Original Filed Date:* 06/26/2020<br>*Original Entered*<br>*Date:* 06/26/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Jennifer A Shepherd<br>*Modified:* |

Amount claimed: $648.71

*History:*

| | | |
|---|---|---|
| Details | 19-1 | 06/26/2020 Claim #19 filed by Department Stores National Bank, Amount claimed: $648.71 (Shepherd, Jennifer) |

*Description:* (19-1) Money Loaned

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (40363524)<br>Synchrony Bank<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk VA 23541 | **Claim No: 20**<br>*Original Filed Date:* 06/30/2020<br>*Original Entered*<br>*Date:* 06/30/2020 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Valerie Smith<br>*Modified:* |

Amount claimed: $9638.42

*History:*

| | | |
|---|---|---|
| Details | 20-1 | 06/30/2020 Claim #20 filed by Synchrony Bank, Amount claimed: $9638.42 (Smith, Valerie) |

*Description:*

*Remarks:* (20-1) CareCredit or GEMB or GECRB

| | | |
|---|---|---|
| *Creditor:* (40245382) | **Claim No: 21** | *Status:* |

EXHIBIT 5    PAGE 74

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

| | | |
|---|---|---|
| PYOD, LLC<br>Resurgent Capital Services<br>PO Box 19008<br>Greenville, SC 29602 | *Original Filed Date*: 07/01/2020<br>*Original Entered*<br>*Date*: 07/01/2020 | *Filed by*: CR<br>*Entered by*: Julia Doan<br>*Modified*: |

Amount claimed: $928.04
Secured claimed:    $0.00

*History:*

| Details | 21-1 | 07/01/2020 Claim #21 filed by PYOD, LLC, Amount claimed: $928.04 (Doan, Julia) |
|---|---|---|

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (40369014)<br>Quantum3 Group LLC as agent for<br>Comenity Bank<br>PO Box 788<br>Kirkland, WA 98083-0788 | **Claim No: 22**<br>*Original Filed Date*: 07/02/2020<br>*Original Entered*<br>*Date*: 07/02/2020 | *Status:*<br>*Filed by*: CR<br>*Entered by*: Adrianne Branca<br>*Modified*: |

Amount claimed: $1106.84

*History:*

| Details | 22-1 | 07/02/2020 Claim #22 filed by Quantum3 Group LLC as agent for, Amount claimed: $1106.84 (Branca, Adrianne) |
|---|---|---|

*Description:* (22-1) Money Loaned

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (40369015)<br>Quantum3 Group LLC as agent for<br>Comenity Capital Bank<br>PO Box 788<br>Kirkland, WA 98083-0788 | **Claim No: 23**<br>*Original Filed Date*: 07/02/2020<br>*Original Entered*<br>*Date*: 07/02/2020 | *Status:*<br>*Filed by*: CR<br>*Entered by*: Adrianne Branca<br>*Modified*: |

Amount claimed: $1076.83

*History:*

| Details | 23-1 | 07/02/2020 Claim #23 filed by Quantum3 Group LLC as agent for, Amount claimed: $1076.83 (Branca, Adrianne) |
|---|---|---|

*Description:* (23-1) Money Loaned

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (40369992)<br>Comerica Bank<br>P.O. Box 75000, MC 7240<br>Detroit, MI 48275 | **Claim No: 24**<br>*Original Filed Date*: 07/03/2020<br>*Original Entered*<br>*Date*: 07/03/2020 | *Status:*<br>*Filed by*: CR<br>*Entered by*: Karen ONail<br>*Modified*: |

Amount claimed: $461064.43
Secured claimed: $461064.43

*History:*

| Details | 24-1 | 07/03/2020 Claim #24 filed by Comerica Bank, Amount claimed: $461064.43 (ONail, Karen) |
|---|---|---|

*Description:* (24-1) real Estate

*Remarks:* (24-1) 508 Westminster Ave Newport Beach CA

| | | |
|---|---|---|
| *Creditor:*      (40375297)<br>California Dept. of Tax and Fee Administration<br>Collections Support Bureau, MIC: 55<br>PO Box 942879<br>Sacramento, CA 94279-0055 | **Claim No: 25**<br>*Original Filed Date*: 07/08/2020<br>*Original Entered*<br>*Date*: 07/08/2020 | *Status:*<br>*Filed by*: CR<br>*Entered by*: Marcelina Cortez<br>*Modified*: |

EXHIBIT 5    PAGE 75

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

| Amount claimed: $107789.59 |
| Priority  claimed:  $96561.55 |

*History:*

Details    25-1    07/08/2020 Claim #25 filed by California Dept. of Tax and Fee Administration, Amount claimed: $107789.59 (Cortez, Marcelina)

*Description:*

*Remarks:*

---

| *Creditor:*    (40380825) BB&T now Truist, Bankruptcy Section 100-50-01-51 P.O. box 1847 Wilson, NC 27894 | **Claim No: 26** *Original Filed Date*: 07/13/2020 *Original Entered Date*: 07/13/2020 | *Status:* *Filed by:* CR *Entered by:* Aleksandra Page *Modified:* |

| Amount  claimed $285489.97 |
| Secured claimed: $285489.97 |

*History:*

Details    26-1    07/13/2020 Claim #26 filed by BB&T now Truist, Bankruptcy Section, Amount claimed: $285489.97 (Page, Aleksandra)

*Description:* (26-1) 7201

*Remarks:*

---

| *Creditor:*    (40110969) Valley Economic Development Center, c/o Levene, Neale, Bender Yoo & Bri 10250 Constellation Blvd. Ste 1700 Los Angeles, CA 90067 | **Claim No: 27** *Original Filed Date*: 07/13/2020 *Original Entered Date*: 07/13/2020 | *Status:* *Filed by:* CR *Entered by:* ePOC-User AutoDocket *Modified:* |

| Amount  claimed: $465578.19 |
| Secured claimed: $465578.19 |

*History:*

Details    27-1    07/13/2020 Claim #27 filed by Valley Economic Development Center,, Amount claimed: $465578.19 (AutoDocket, ePOC-User)

*Description:*

*Remarks:* (27-1) Account Number (last 4 digits):1094

---

| *Creditor:*    (40381275) VEDC Trust as successor to Valley Economic Develop 10250 Constellation Blvd, Suite 1700 Los Angeles, CA 90067 | **Claim No: 28** *Original Filed Date*: 07/13/2020 *Original Entered Date*: 07/13/2020 | *Status:* *Filed by:* CR *Entered by:* ePOC-User AutoDocket *Modified:* |

| Amount  claimed: $465578.19 |
| Secured claimed: $465578.19 |

*History:*

Details    28-1    07/13/2020 Claim #28 filed by VEDC Trust as successor to Valley Economic Develop, Amount claimed: $465578.19 (AutoDocket, ePOC-User)

*Description:*

*Remarks:* (28-1) Account Number (last 4 digits):1094

---

| *Creditor:*    (40381552) City National Bank C/o Lance Jurich Loeb & Loeb LLP | **Claim No: 29** *Original Filed Date*: 07/13/2020 *Original Entered Date*: 07/13/2020 | *Status:* *Filed by:* CR *Entered by:* Benjamin R King *Modified:* |

EXHIBIT 5    PAGE 76

CM/ECF - U.S. Bankruptcy Court (v1.5.3 - LIVE)

https://ecf.cacb.uscourts.gov/cgi-bin/SearchClaims.pl?191971568628209-L_1_0-1

| | | |
|---|---|---|
| 10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067 | | |

Amount  claimed: $465578.19
Secured claimed: $465578.19

*History:*

| Details | 29-1 | 07/13/2020 Claim #29 filed by City National Bank, Amount claimed: $465578.19 (King, Benjamin) |

*Description:*

*Remarks:*

## Claims Register Summary

**Case Name:** Fariborz Zanjanee Babaee and Malihe P. Babaee
**Case Number:** 8:20-bk-10268-TA
**Chapter:** 7
**Date Filed:** 01/27/2020
**Total Number Of Claims:** 29

| Total Amount Claimed* | $2655186.87 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $2395157.47 | |
| **Priority** | $97411.55 | |
| **Administrative** | | |

EXHIBIT 5    PAGE 77

# EXHIBIT 6

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

Date Prepared: 8/8/2021

1. **OFFER:**
   A. **THIS IS AN OFFER FROM**  Andrew Tan and Jenny Huang  ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is  508 Westminster , situated in
      Newport Beach (City),  Orange (County), California,  92663 (Zip Code), Assessor's Parcel No.  425-092-24 ("Property").
   C. **THE PURCHASE PRICE** offered is  Two Million Eight Hundred Sixty Thousand
      Dollars $ 2,860,000
   D. **CLOSE OF ESCROW** shall occur on ☒ Date Specified in Escrow Instructions (date) (or ~~Days After Acceptance~~).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent  Berkshire Hathaway HomeServices (Print Firm Name) is the agent of (check one):
      ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent  (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** ~~The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).~~

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 100,000
      **(1) Buyer Direct Deposit:** Buyer shall deliver ~~deposit directly to Escrow Holder by electronic funds transfer,~~ ☐ cashier's check, ☐ personal check, ☐ other _Made out to the Trustee_ within 3 business days after Acceptance (or ~~_____~~);
      ~~OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____)
      to the agent submitting the offer (or to _____), made payable to
      _____. The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____).
      Deposit checks given to agent shall be an original signed check and not a copy.~~
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** ~~Buyer shall deposit with Escrow Holder an increased deposit in the amount of~~ . . . . . . . . . $ _____
      ~~within _____ Days After Acceptance (or _____).~~
      ~~If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.~~
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. ~~This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____) Days After Acceptance, Deliver to Seller such verification.~~
   D. **LOAN(S):**
      ~~(1) FIRST LOAN: in the amount of~~ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      ~~This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____. This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.~~
      **(2) ☐ SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____. This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
      the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      ~~(3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____) Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay for or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.~~
   E. **ADDITIONAL FINANCING TERMS:** Buyers Agent to contribute Half of the
      Buyers-Side Brokerage Fee ONLY as a credit towards closing costs.
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . $ _____
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,860,000

Buyer's Initials ( AT ) ( )    Seller's Initials ( RAm ) ( )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**EXHIBIT 6    PAGE 78**

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., , 508 Westminster Ave, Newport Beach, CA 92663-4219                    Date: 8/8/2021

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( X Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or X is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

**J. LOAN TERMS:**
(1) LOAN APPLICATIONS: Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) ☐ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

| A. ADDENDA: | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

| B. BUYER AND SELLER ADVISORIES: | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | X Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS:** *PROPERTY TO BE SOLD IN "AS-IS", "WHERE-IS" CONDITION WITH ALL FAULTS AND WITHOUT ANY WARRANTIES, EXPRESSED OR IMPLIED. PEST CONTROL/TERMITE INSPECTION REPORT AND ANY CORRECTIVE WORK WILL NOT BE PROVIDED, COMPLETED BY NOR PAID FOR BY SELLER. TRUSTEE'S ADDENDUM TO EXCLUSIVE AND RIGHT TO SELL IS INCORPORATED HEREIN IN ITS ENTIRETY.*

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
(1) ☐ Buyer X Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
                    prepared by **Seller's Choice**
(2) ☐ Buyer ☐ Seller shall pay for the following Report _____
        prepared by _____
(3) ☐ Buyer ☐ Seller shall pay for the following Report _____
        prepared by _____

Buyer's Initials ( AT )( MK )                    Seller's Initials ( RAM )( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Trustee -

EXHIBIT 6    PAGE 79

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: _____, 508 Westminster Ave, Newport Beach, CA 92663-4219 _____ Date: 8/8/2021

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) [X] Buyer [ ] Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) [ ] Buyer [ ] Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) [ ] Buyer [ ] Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

(1) (a) [X] Buyer [X] Seller shall pay escrow fee *each to pay their own* _____ .

(b) Escrow Holder shall be *Seller's Choice* _____ .

(c) The Parties shall, within **5** (or ____ ) Days After receipt, sign and return Escrow Holder's general provisions.

(2) (a) [ ] Buyer [X] Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .

(b) Owner's title policy to be issued by *Seller's Choice* _____ .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) [ ] Buyer [X] Seller shall pay County transfer tax or fee _____ .

(2) [ ] Buyer [ ] Seller shall pay City transfer tax or fee _____ .

(3) [ ] Buyer [ ] Seller shall pay Homeowners' Association ("HOA") transfer fee *split 50/50* _____ .

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525

(5) [X] Buyer [ ] Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525 .

(6) Buyer to pay for any HOA certification fee.

(7) [ ] Buyer [ ] Seller shall pay for any private transfer fee _____ .

(8) [ ] Buyer [ ] Seller shall pay for _____ .

(9) [ ] Buyer [ ] Seller shall pay for _____ .

(10) [ ] Buyer [ ] Seller shall pay for the cost, not to exceed $ _____ , of a standard (or [ ] upgraded) one-year home warranty plan, issued by *Click here to select your Service Provider* _____ , with the following optional coverages: [ ] Air Conditioner [ ] Pool/Spa [ ] Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR [ ] **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: [X] all stove(s), except _____ ; [ ] all refrigerator(s) except _____ ; [ ] all washer(s) and dryer(s), except _____ .

(3) The following additional items: _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( [ ] are NOT) included in the sale.

(5) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____

_____ **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or [ ] will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials ( DS / AT ) ( ____ )                    Seller's Initials ( DS / RAM ) ( ____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Trustee -

EXHIBIT 6    PAGE 80

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., 508 Westminster Ave, Newport Beach, CA 92663-4219 _____    Date: 8/8/2021

**9.  CLOSING AND POSSESSION:**

**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

**B.  Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ____ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____.

~~C.  Seller remaining in possession After Close Of Escrow: If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more, and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.~~

**D.  Tenant-occupied property: Property shall be vacant** at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

**OR ☐** Tenant to remain in possession (C.A.R. Form TIP).

~~E.  At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.~~

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

~~**10.  STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**~~

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form AVID).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

**B.  NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C.  WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D.  MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( AT ) ( _____ )        Seller's Initials ( Rtm ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Trustee -

EXHIBIT 6    PAGE 81

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., , 508 Westminster Ave, Newport Beach, CA 92663-4219 _____ Date: 8/8/2021

~~(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has~~
**3 (or ___) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents ~~required by Law;~~
**(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement ~~containing the location and~~
number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special
meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private
transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures
received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this
Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow
~~or direct to HOA or management company to pay for any of the above.~~

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT
physical condition as of the date of Acceptance and ~~(b) subject to Buyer's Investigation rights;~~ **(ii)** the Property, including pool, spa,
landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris
and personal property not included in the sale shall be removed by Close Of Escrow.
  **A.** ~~Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the~~
    ~~Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.~~
  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information
    discovered in those investigations: (i) cancel this Agreement; ~~or (ii) request that Seller make Repairs or take other action.~~
  **C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition.**
    **Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property**
    **improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY: NOT**
  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in
    this paragraph ~~and paragraph 14B. Within the time specified in paragraph 14B(1),~~ Buyer shall have the right, at Buyer's expense unless
    otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not
    limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for
    wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building
    and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the
    owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other
    common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and
    shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be
    separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section
    2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; ~~(iv) satisfy Buyer as to any matter specified in the attached~~
    ~~Buyer's Inspection Advisory (C.A.R. Form BIA);~~ **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer
    and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may
    need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or
    destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any
    governmental building or zoning inspector or government employee, unless required by Law.
  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete
    Buyer Investigations and either remove the contingency or cancel this Agreement, ~~and (ii) give Seller, at no cost, complete~~
    ~~Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.~~
  **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession
    is made available to Buyer.
  **D.** **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair
    all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands,
    damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers'
    compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring
    during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain
    protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work
    done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
  **A.** ~~Within the time specified in paragraph 14,~~ Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary
    Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. ~~Buyer's review of~~
    the Preliminary Report and any other matters which may affect title are a contingency of this Agreement ~~as specified in paragraph 14B.~~ The
    company providing the Preliminary Report, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers
    except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government
    ~~entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.~~
  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other
    matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay
    off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller
    has agreed to remove in writing.
  **C.** ~~Within the time specified in paragraph 14A,~~ Seller has a duty to disclose to Buyer all matters known to Seller affecting title,
    whether of record or not.
  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment
    of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall
    vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT
    LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( AT ) ( )        Seller's Initials ( RAM ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Trustee -

EXHIBIT 6    PAGE 82

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: _ , _ , 508 Westminster Ave, Newport Beach, CA 92663-4219 _____ Date: 8/8/2021

E.  Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer.  A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14.  TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

   **A.  SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to  Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

   **B. (1)  BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the  Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

   **(2)**  Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

   **(3)**  By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

   **(4)  Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

   **(5)**  Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

   **C. ☐ REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

   **D.  SELLER RIGHT TO CANCEL:**

   **(1)  Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement.  In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   **(2)  Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19.  In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   **E.  NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable  paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

   **F.  EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and  review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

   **G.  CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

   **H.  EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _A T_ ) ( _____ )                                                  Seller's Initials ( _R.Am_ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 6 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

EXHIBIT 6    PAGE 83

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., , 508 Westminster Ave, Newport Beach, CA 92663-4219                    Date: 8/8/2021

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or** ☐ ___ **) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN SELLER AND BUYER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( _AT_ ) ( _____ )                    Seller's Initials ( _Ron_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Trustee -

EXHIBIT 6    PAGE 84

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ... , 508 Westminster Ave, Newport Beach, CA 92663-4219 _____ Date: 8/8/2021

C.  Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D.  Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E.  A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A.  Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B.  LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _____ / _____                    Seller's Initials _____ / _____

22. DISPUTE RESOLUTION:

A.  MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B.  ARBITRATION OF DISPUTES:
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ___ _____ / _____                Seller's Initials _____ / _____

C.  ADDITIONAL MEDIATION AND ARBITRATION TERMS:
(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _____ ) ( _____ )                Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                Trustee -

EXHIBIT 6    PAGE 85

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., , 508 Westminster Ave, Newport Beach, CA 92663-4219                    Date: 8/8/2021

(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee.  Such consent shall not be unreasonably withheld.  Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**   Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:
   **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   **B. "Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
   **C. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
   **D. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
   **E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   **F. "Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   **G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   **H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   **I. "Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
   **J. "Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
   **K. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   **L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   **M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [    ] AM/ [    ] PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date  8/8/2021                      BUYER  Andrew Tan
(Print name)  Andrew Tan
Date  8/8/2021                      BUYER  Jenny Huang
(Print name)  Jenny Huang

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( PAM )( _____ )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Trustee -

EXHIBIT 6    PAGE 86

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

Property Address: ..., , 508 Westminster Ave, Newport Beach, CA 92663-4219 _____ Date: __8/8/2021__

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[X] (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED** ~~COUNTER OFFER (C.A.R. Form SCO or SMCO)~~ DATED: *Trustee's Addendum*

[ ] One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date __8/9/21__ SELLER _____ *Karmik, Trustee* _____
**(Print name)** __Richard A. Marshack, Ch 7 Trustee__ _____
Date _____ SELLER _____
**(Print name)** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

(____ / ____) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
[ ] AM/ [ ] PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D.** **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _____ CalBRE Lic. # _____
By _____ CalBRE Lic. # _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Real Estate Broker (Listing Firm) ___Berkshire Hathaway HomeServices___ CalBRE Lic. # _____
By _____ *Clarence Yoshikane* CalBRE Lic. # __00801398__ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address __1400 Newport Center Drive, Suite 200__ City __Newport Beach__ State __CA__ Zip __92660__
Telephone __714.606.5765__ Fax _____ E-mail __Clarence.Yoshikane@gmail.com__

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, [ ] a deposit in the amount of $ _____ ),
counter offer numbers _____ [ ] Seller's Statement of Information and
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
[ ] Department of Business Oversight, [ ] Department of Insurance, [ ] Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:        Buyer Acknowledges that page 10 is part of this Agreement ( ___AT___ ) ( ___ )
REAL ESTATE BUSINESS SERVICES, INC.                    Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
=525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

Reviewed by
Broker or Designee

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Trustee -

EXHIBIT 6    PAGE 87

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement (hereinafter called "Agreement") is entered into on ___August 6th___, 2021, by and between _Andrew Tan & Jenny Huang_, (hereinafter "Buyer") and **Richard A. Marshack, as Chapter 7 Trustee for the Estate of: Fariborz Zanjanee Babaee and Malihe P. Babaee, Case No. 8:20-bk-10268-TA** (hereinafter called "Seller" or "Trustee") pursuant to the terms and conditions as follows:

## RECITALS

WHEREAS: The Debtor in the bankruptcy proceeding entitled **Fariborz Zanjanee Babaee and Malihe P. Babaee**, is the owner of record of certain real property commonly known as: **508 Westminster Ave, Newport Beach, CA 92663 (APN: 425-092-24),** (Hereinafter the "Subject Property"), which is now property of the Estate.

WHEREAS: **Fariborz Zanjanee Babaee and Malihe P. Babaee** ("Debtor") filed a Voluntary Petition under Chapter 7 of Title 11, United States Bankruptcy Code, on **January 27, 2020**, initiating **Case No. 8:20-bk-10268-TA** ("Case") in the United States Bankruptcy Court, Central District of California.

WHEREAS: As a result of the Chapter 7 petition, **Richard A. Marshack**, was appointed as the Trustee to administer the assets of the bankruptcy estate, one of which was the Debtor's interest in the Subject Property.

WHEREAS: Pursuant to 11 U.S.C. Section 363, **Richard A. Marshack**, Chapter 7 Trustee and/or his attorneys will seek a Court Order authorizing the sale of the Subject Property.

WHEREAS: Buyers have made an offer on the Property by way of a Purchase Agreement.

WHEREAS: Any sale of the Property is subject to certain terms and conditions imposed by the Bankruptcy Code and ancillary procedures, and any sale requires an Order of the Bankruptcy Court.




EXHIBIT 6    PAGE 88

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

**NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:**

**<u>CONDITIONS OF SALE</u>**

<u>Court Approval</u>: Seller agrees to proceed in good faith to obtain Court approval for the sale of property located at **508 Westminster Ave, Newport Beach, CA 92663 (APN: 425-092-24)** contemplated herein, within reasonable time period after said offer.

1.  <u>Broker's Compensation</u>: Brokers and Agents are entitled to compensation only upon recordation of a deed or other evidence of title.

2.  <u>No Assignment:</u> This agreement is between Buyer and Seller. Buyer shall have no right to assign the Escrow, this agreement, or transfer the Subject Property concurrent with closing without consent of Seller.

3.  <u>Title Insurance</u>: The title insurance policy shall be subject only to liens, encumbrances, clouds and other matters as may appear on the preliminary title report, that are not to be removed at the close of Escrow, and have not been objected to by Buyer. Should Seller be unwilling or unable to eliminate those title matters disapproved by Buyer as above, the Seller may terminate this Agreement or; should Seller fail to deliver good and marketable title as provided above, Seller or Buyer may terminate this Agreement. In either case, the Buyer's deposit shall be returned to Buyer, and Buyer shall have no recourse against Seller, **Richard A. Marshack** as Bankruptcy Trustee, individually, or the **<u>Law Offices of MARSHACK HAYS LLP</u>, the bankruptcy estate of Fariborz Zanjanee Babaee and Malihe P. Babaee 8:20-bk-10268-TA**, or the Debtor, or any real estate agent, broker or attorney involved in this transaction including **Clarence Yoshikane of Berkshire Hathaway HomeServices.**

4.  <u>Limitations of Sale:</u> The parties acknowledge that the operation of the law has placed the Bankruptcy Trustee in a unique role as the Seller of the Subject Property, which is the subject of this agreement. Due to the nature of the Trustee's role in administering the bankruptcy estate, there are limitations as to the extent, type and character of the agreement under which the Trustee can convey the Subject Property. The Trustee proposes to sell this asset subject to certain limitations. The parties hereby acknowledge that they understand the terms under which this Subject Property is to be conveyed may vary substantially from the normal customs and trade within the real estate industry. Except where expressly mandated by operation of law, the Buyer consents to any such modifications and amendments.





EXHIBIT 6    PAGE 89

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

5.    <u>Purchase without Warranties:</u> Buyers acknowledge that they are purchasing the Subject Property from the Seller "AS IS" without warranties of any kind, expressed or implied, being given by the Seller, concerning the condition of the property or the quality of the title thereto, or any other matters relating to the Property. Buyer represents and warrants that they are purchasing the Subject Property as a result of their own investigations and are not buying the Subject Property pursuant to any representation made by any Broker, Agent, Accountant, Attorney or Employee acting at the direction, or on the behalf of the Seller. Buyers acknowledge that Buyers have inspected the Subject Property, and upon closing of Escrow governed by this Agreement, Buyer forever waives, for  himself, his heirs, successors and assigns,  any  and all  claims against the Debtors, their attorneys, agents and employees, the bankruptcy estate of **Fariborz Zanjanee Babaee and Malihe P. Babaee ("Estate") 8:20-bk-10268-TA**, **Richard A. Marshack**, as Bankruptcy Trustee and individually, and his Attorneys, Agents and Employees, arising or which might otherwise arise in the future concerning the Subject Property including **Clarence Yoshikane of  Berkshire Hathaway HomeServices.**

6.    <u>Trustee's Liability:</u> Buyer acknowledges that the Trustee is acting in his official capacity only. No personal liability shall be sought or enforced against the Trustee with regard to this Agreement, including the Addendum, the assets, the sale of the Subject Property, or the physical condition of the Subject Property. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to return any money paid to the Trustee by the Buyer, without deduction. Prior to and after the closing of escrow, the United States Bankruptcy Court shall have and retain the sole and exclusive jurisdiction over the Assets of this transaction and Agreement; and all disputes arising before and after closing shall be resolved in said Court.

7.    <u>Hold Harmless:</u>

Buyer understands the terms and conditions of the entire purchase contract and holds the estate, realtors, brokers, agents, **Richard A. Marshack**, and The **Law Offices of MARSHACK HAYS LLP**, his attorneys, agents and employees harmless from any liabilities arising from this contract.



    

EXHIBIT 6    PAGE 90

8.    Any and all disputes, which involve in any manner the Bankruptcy Estate or **Richard A. Marshack**, realtors, brokers, agents, arising from this Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

**10.    Seller will not provide a pest control report nor pay for any corrective work; nor shall Buyer receive any credit for corrective work.**

**11.    Buyer is aware that this offer is contingent upon Chapter 7 Bankruptcy Trustee approval, Bankruptcy Court confirmation & overbid procedures.**

**12.    Buyer has NO CONTINGENCIES in this transaction; including but not limited to the contingency of obtaining financing & appraisal, inspections, etc.**
**Deposit is refundable only if Bankruptcy Court accepts overbid.**

**13.    Buyer to purchase property subject to existing Tenancy(s).**

**Seller to transfer to Buyer prorated Rents and Security Deposits at Close of Escrow.**

**Seller to provide Buyer with rental agreements prior to Buyer depositing Earnest Money Deposit with Trustee.**

**14.    In addition to the $100,000 deposit**, Buyer will deposit the additional sum of $ 2,760,000 _____ **(Balance of purchase price)** into escrow on or before the close of escrow.

**I, the Buyer herein, have reviewed the foregoing Agreement and understand the terms and conditions set forth herein, and further agree to purchase the Subject Property pursuant to said terms and conditions.**

**Date:**    8/8/2021

_Andrew Tan_
FFA714C... Andrew Tan                    **, Buyer**

**Date:**    8/8/2021

_[signature]_
2E7CB26C... Jenny Huang                    **, Buyer**

EXHIBIT 6    PAGE 91

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

**I, Seller, agree to sell the Subject Property pursuant to the terms and conditions set forth herein.**

**Date:**  8/9/2

**Richard A. Marshack, in his sole capacity as Bankruptcy Trustee for the Estate of Fariborz Zanjanee Babaee and Malihe P. Babaee ("Estate") 8:20-bk-10268-TA  and not in his individual capacity or as a member of the Law Offices of MARSHACK HAYS LLP**

**SO AGREED.**

**Date:**

**Clarence Yoshikane, Trustee's Agent
CA BRE License # 00801398**

**714.606.5765, Direct Line**

**Clarence.Yoshikane@gmail.com**

**Date:**

**, Buyer's Agent**

EXHIBIT 6     PAGE 92

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

**CALIFORNIA ASSOCIATION OF REALTORS®**

**ADDENDUM**

**(C.A.R. Form ADM, Revised 4/12)**

No. _One_

The following terms and conditions are hereby incorporated in and made a part of the: [X] Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ Other _____

dated 8/8/2021 _____, on property known as 508 Westminster, Newport Beach, CA 92663 _____

in which ____ Andrew Tan & Jenny Huang _____ is referred to as ("Buyer/Tenant")
and Richard A. Marshack, Ch 7 Trustee _____ is referred to as ("Seller/Landlord").

Minimum overbid to be at least $10,000 higher than original bid. Overbidder to match all terms and conditions of original bid. If a successful overbidder is accepted and confirmed by the court, then the successful overbidder is to reimburse original bidder up to: $2,000 costs incurred. Only Physical Inspection, Termite Inspection, and Loan Appraisal are reimbursable expenses. Aforementioned Costs incurred to be collected by Escrow. Proof of monies spent to be given to overbidder.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date 8/8/2021 _____     Date 8/9/21 _____

Buyer/Tenant _Andrew Tan_     Seller/Landlord _Domik, Trustee_
Richard A. Marshack, Ch 7 Trustee

Buyer/Tenant _Jenny Huang_     Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 4/12 (PAGE 1 OF 1)**

Reviewed by _____ Date _____

**ADDENDUM (ADM PAGE 1 OF 1)**

BHHSCP / Berkshire Hathaway Home Services - California Properties, 2405 McCabe Way # 100 Irvine, CA 92614        Phone: (714) 606-5765        Fax:        Addendum
CLARENCE YOSHIKANE        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EXHIBIT 6    PAGE 93

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _____ *Khamis, Trustee* | | Date 8/9/21 |
| Seller _____ | | Date _____ |
| Buyer *Andrew Tan* | Andrew Tan | Date 8/8/2021 |
| Buyer _____ | Jenny Huang | Date 8/8/2021 |
| Buyer's Brokerage Firm *Berkshire Hathaway HomeServices California Properties* | DRE Lic # *01317331* | Date _____ |
| By _____ | DRE Lic # *01927057* | Date _____ |
| *Clarence Yoshikane* | | |
| Seller's Brokerage Firm *Berkshire Hathaway HomeServices California Properties* | DRE Lic # *01317331* | Date _____ |
| By _____ | DRE Lic # *00801398* | Date _____ |
| *Clarence Yoshikane* | | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

| | |
|---|---|
| **R E B S** | Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020 |

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

**EXHIBIT 6    PAGE 94**

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F



### DISCLOSURE REGARDING
### REAL ESTATE AGENCY RELATIONSHIP
**(Buyer's Brokerage Firm to Buyer)**
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/18)**



☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.

    (b)  A duty of honest and fair dealing and good faith.

    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.

    (b)  A duty of honest and fair dealing and good faith.

    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.

    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Andrew Tan_      Date 8/8/2021

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _(signature)_      Date 8/8/2021

Agent _**Berkshire Hathaway HomeServices California Properties**_    DRE Lic. # _**01317331**_

                                Real Estate Broker (Firm)

By _____ DRE Lic. # _**01927057**_      Date

    (Salesperson or Broker-Associate, if any) _**Clarence Yoshikane**_

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

BHHS California Properties - Newport Beach, 1400 Newport Center Dr Ste 200 Newport Beach CA 92660      Phone: (555)555-5555      Fax: 9496407429      BK
Jennifer Toyama                      Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

EXHIBIT 6     PAGE 95

DocuSign Envelope ID: 6A65A570-1703-41BE-904D-DD198C65962F

**CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
**(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17**(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm   <u>DO NOT COMPLETE. SAMPLE ONLY</u>                       License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent         <u>DO NOT COMPLETE. SAMPLE ONLY</u>                       License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm   <u>DO NOT COMPLETE. SAMPLE ONLY</u>                       License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent         <u>DO NOT COMPLETE. SAMPLE ONLY</u>                       License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article or the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or that the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

| R E B S | Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020 |



**AD REVISED 12/18 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    BK

EXHIBIT 6    PAGE 96

# SUPERIOR HOME LOAN, INC.

1201 W. HUNTINGTON DRIVE SUITE 111, ARCADIA, CA 91007
TEL: (626) 374-5678 ❍ FAX: (626) 231-0345
Email:andrew@shomeloan.com ❍ Website: www.shomeloan.com

## PRE-APPROVAL

DATE                    :        August 6, 2021

APPLICANT[S] NAME       :        Andrew Tan


SUBJECT PROPERTY        :        508 Westminster Ave., Newport Beach, CA 92663

Dear Andrew:

Congratulations!!! Your loan request has been **PRE-APPROVED**.  We have completed a preliminary review of your income, asset, and credit report.  To issue final approval, we need the following documentation:

1.  FICO maintained at min. 740,

2.  Receipt of satisfactory appraisal with the minimum value to match the final purchase price. *(subject to lender review)*,

3.  Receipt of certified escrow instructions, copy of deposit check and receipt, and title report and acceptable HOA certification if applicable.

The terms of this Pre-Approval are:

| | | |
|---|---|---|
| **Loan Program(s):    67% LTV, 3.125% @ 0 point, 30 year Jumbo Fixed** | | |
| *Interest rate NOT locked yet and subject to change before lock-in commitment.* | | |
| **Price up to: $3,000,000** | **Loan Amount: up to: $2,000,000** | **Down Payment: 33%** |

This PRE-APPROVAL is applicable to the loan terms and program stated above and this is NOT a commitment to lend. Should you choose another loan program, this may require a new loan approval and could be subject to new conditions.

**This loan pre-approval is subject to no adverse change in employment, liabilities and assets, as verified.**


Sincerely,

*Andrew Tan*

Home Loan Manager (NMLS 265830)
Cell. (626) 374-5678
Andrew@shomeloan.com

EXHIBIT 6    PAGE 97

# TD Ameritrade

800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209
TD Ameritrade Clearing, Inc., Member SIPC

ANDREW TAN, JENNY HUANG TRS FBO ANDREW
TAN & JENNY HUANG REVOCABLE LIVING
TRUST UA 02/29/2016

**Statement Reporting Period:**
07/01/21 - 07/31/21

## Portfolio Summary

| Investment | Current Value | Prior Value | Period Change | % Change | Estimated Income | Estimated Yield | Portfolio Allocation |
|---|---|---|---|---|---|---|---|
| Cash | $840,188.49 | $510,675.55 | $329,512.94 | | $ - | | |
| Insrd Dep Acct (IDA) | - | - | - | | - | | |
| Money Market | - | - | - | | - | | |
| Short Balance | - | - | - | | - | | |
| Stocks | 230,109.46 | 208,578.99 | 21,530.47 | 10.3% | 1,226.59 | 0.5% | |
| Short Stocks | - | - | - | | - | | |
| Fixed Income | - | - | - | | - | | |
| Options | - | - | - | | - | | |
| Short Options | - | - | - | | - | | |
| Mutual Funds | - | - | - | | - | | |
| Other | - | - | - | | - | | |
| Total | $1,070,297.95 | $719,254.54 | $351,043.41 | 48.8% | $1,226.59 | 0.1% | |
| Margin Equity | 100.0% | | | | | | |

Portfolio Allocation: Stocks 21.5%, Cash 78.5%

## Cash Activity Summary

| | Current | YTD |
|---|---|---|
| Opening Balance | $510,675.55 | $144,402.35 |
| Securities Purchased | (20,528.00) | (59,678.00) |
| Securities Sold | - | 12,317.73 |
| Funds Deposited | 350,000.00 | 806,211.27 |
| Funds Disbursed | - | (63,750.00) |
| Income | 40.94 | 691.94 |
| Expense | - | (6.80) |
| Other | - | - |
| Closing Balance | $840,188.49 | $840,188.49 |

## Income & Expense Summary

| Income | Reportable | Non Reportable | YTD |
|---|---|---|---|
| Dividends | $35.93 | $ - | $672.01 |
| Interest | 5.01 | - | 19.93 |
| Other | - | - | - |
| Expense | | | |
| Interest | - | - | - |
| Fees | - | - | (6.80) |
| Other | - | - | - |
| Net | $40.94 | $0.00 | $685.14 |

## Performance Summary

Cost Basis As Of - 07/31/21**   $128,880.87
| | |
|---|---|
| Unrealized Gains | 103,643.79 |
| Unrealized Losses | (2,415.20) |
| Funds Deposited/(Disbursed) YTD | 742,461.27 |
| Income/(Expense) YTD | 685.14 |
| Securities Received/(Delivered) YTD | 0.00 |

**To view realized gains and losses for your account, login at
www.tdameritrade.com and visit My Account > Cost Basis.

EXHIBIT 6     PAGE 98

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): <u>Chapter 7 Trustee's Motion For Order: (1)</u> <u>Authorizing Sale Of Real Property Free And Clear Of Liens, Claims, And Interests Pursuant To 11 U.S.C. §§ 363(B)</u> <u>And (F); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, And Back-Up Bidder As Good-Faith</u> <u>Purchaser Pursuant To 11 U.S.C. § 363(M);  (4) Authorizing Payment Of Undisputed Liens, Real Estate Broker's</u> <u>Commissions, Agent's Administrative Claim, And Other Ordinary Costs Of Sale; And (5) Directing All Occupants Of The</u> <u>Property To Vacate The Property And Remove All Personal Property; Memorandum Of Points And Authorities;</u> <u>Declarations Of Richard A. Marshack, Clarence Yoshikane, Andrew Tan And Jenny Huang In Support</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>September 21, 2021</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>September 21, 2021</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Theodor C. Albert
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

Malihe Babaee
Fariborz Zanjanee Babaee
508 Westminster Ave.
Newport Beach, CA 92663-4219
**Debtors**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>September 21, 2021</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY EMAIL:**
John P. Marecki - jpmarecki@comerica.com
David K. Gottlieb - dgottlieb@dkgallc.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 9/21/2021 | Gloria Estrada | *Gloria Estrada* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

David M Goodrich    dgoodrich@wgllp.com,
kadele@wgllp.com;lbracken@wgllp.com;wgGllp@ecf.courtdrive.com;gestrada@wgllp.com
Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com
Christopher J Langley    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com
George C Lazar    glazar@foxjohns.com
Richard A Marshack (TR)    pkraus@marshackhays.com,
rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com
Avi Schild    bk@atlasacq.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Robert P Zahradka    rzahradka@nationalfunding.com

**SERVED BY UNITED STATES MAIL**:

Andrew Tan
Jenny Huang
Superior Home Loan, Inc.
1201 W. Huntington Drive, #111
Arcadia, California 91007

Fidelity National Title Company
Blake Uradomo
Order No. 00361719-997-OC1-245
1300 Dove Street, 3rd Floor
Newport Beach, CA 92660

A & A Escrow Services, Inc.
Antonia Delgado
415 N. Crescent Drive, Suite 320
Beverly Hills, CA 90210

Clarence Yoshikane
Jennifer Toyama
Berkshire Hathaway
HomeServices
1400 Newport Center Drive, Suite
200
Newport Beach, CA 92660

Shellpoint Mortgage Servicing
Attn:  President
55 Beattie Place, Suite 110,
MS#01
Greenville, SC 29601

Shellpoint Mortgage Servicing
Attn:  Bankruptcy
PO Box 10826
Greenville, SC 29603

First Choice Bank
Attn:  President
41530 Enterprise Circle South, Ste
202
Temecula, CA 92590

Comerica Bank

Attn:  President
PO Box 71203
Philadelphia, PA 19176


John P. Marecki
Vice President
Comerica Bank
1717 Main Street
Dallas, TX 75201

Comerica Bank
Karen O'Nail
Bankruptcy Specialist
Comerica Bank
PO Box 75000, MC 7240
Detroit, MI 48275

City National Bank
Michael Rosenheck
Vice President
555 S. Flower Street
Los Angeles, CA 90071

Valley Economic Development
Center
c/o Levene, Neale, Bender, Yoo &
Brill
10250  Constellation Blvd., Ste
1700
Los Angeles, CA 90067

David K. Gottlieb, Liquidating
Trustee
of the VEDC Liquidating Trust
D. Gottlieb & Associates, LLC
16255 Ventura Blvd., Suite 440
Encino, CA 91436

Department of the Treasury-
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Linda Micheaux, Bankruptcy
Specialist
1919 Smith Street M/S 5024 HOU
Houston, TX 77002

Branch Banking & Trust Company
(now Truist)
Aleksandra W. Page, Banking
Officer
P.O. Box 1847, 100-50-01-51
Wilson, NC 27894

Orange County Tax Collector
PO Box 1980
Santa Ana, CA 92702-1980

County of Orange
Attn: Treasurer-Tax Collector
P.O. Box 4515
Santa Ana, CA 92702-4515

Orange County Treasurer
PO Box 1438
Santa Ana, CA 92702-1438

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**